# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

CASE NO. 22-13798

LOWER TRIBUNAL: S.D. FLA. NO. 19-20896

_____

## KEITH STANSELL, ET AL.,

Terrorism Victim Plaintiffs / Appellees,

v.

## SAMARK JOSE LOPEZ BELLO, ET AL.,

Claimants/Appellants.

_____

## APPELLEES' ANSWER BRIEF

_____

Newton P. Porter
Florida Bar No. 833738
Tony Korvick
Florida Bar No. 768405
PORTER & KORVICK, P.A.
9655 S. Dixie Hwy Suite 208
Miami, Florida 33156

Richard B. Rosenthal
*Counsel of Record*
Florida Bar No. 0184853
THE LAW OFFICES
  OF RICHARD B. ROSENTHAL, P.A.
1581 Brickell Ave. Suite 1408
Miami, Florida 33129
Tel: (305) 992-6089
rbr@rosenthalappeals.com

## CERTIFICATE OF INTERESTED PERSONS

Appellees file this Certificate of Interested Persons and Corporate Disclosure Statement under Fed. R. App. P. 26-1 and 11th Circuit Local Rule 26.1-1.  Appellees certify that in addition to those persons and entities included in Appellants' Certificate of Interested Persons and Corporate Disclosure Statement filed with this Court, Appellees hereby list the following persons or entities:

1. EL AISSAMI MADDAH, Tareck Zaidan (Venezuelan National designated by OFAC February 13, 2017 under the Foreign Narcotics Kingpin Designation Act).

2. LAW OFFICES OF RICHARD B. ROSENTHAL, P.A.

3. PORTER & KORVICK, P.A.

4. NEWTON P. PORTER

5. ANTHONY P. KORVICK

6. RICHARD B. ROSENTHAL

7. RAYMOND JAMES & ASSOCIATES, INC.

Case: 22-13798

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit

Local Rules 26.1-1 through 26.1-3, the Appellees further state that none of the

Appellees are corporations, thus they have no parent companies, or any publicly-

or privately-held shares or ownership interests.

*s/ Richard B. Rosenthal*
Richard B. Rosenthal

## STATEMENT REGARDING ORAL ARGUMENT

Appellants seek to whet this Court's appetite for Oral Argument under false pretenses. They argue (Br.1) the appeal concerns "the question of how the district court applied the fugitive disentitlement doctrine against a defendant in a civil case" which, they assert, is an issue "of first impression in this Circuit[,]" and also that "the use of the [fugitive disentitlement] doctrine to deny a litigant's motion conflicts with the Second Circuit's decision in *United States v. Bescond*, 24 F.4th 759, 767 (2d Cir. 2021)." As our Argument section will detail, neither of these statements is accurate; but more to the point for now, consideration of the entire topic of the fugitive disentitlement doctrine is *unnecessary* to decide this appeal.

The only *dispositive* issue on appeal is whether the district court abused its ample discretion by entering default judgment against Appellants after they engaged in repeated, willful violations of discovery orders. To distract from that reality, Appellants' Brief constructs an elaborate sideshow—namely the "fugitive disentitlement doctrine issue"—which the district court stated explicitly was an *independent, alternative* basis for *some* of its rulings, *not a necessary component* of *any* of them. District Court Orders at R-523 at 1-2; R-527 at 1; R-536 at 1, 3 n.1.

To be clear: if this Court wishes to conduct Oral Argument, then Appellees stand ready, willing, and able. But if Oral Argument is indeed ordered, it should be ordered on the basis of a *real* issue in this appeal, not a tangential or contrived one.

i

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS……………………………C-1 of 2

STATEMENT REGARDING ORAL ARGUMENT………………………………i

TABLE OF CONTENTS……………………………………………….....ii

TABLE OF AUTHORITIES………………………………………..…......vi

STATEMENT REGARDING APPELLATE JURISDICTION…………………..xi

ISSUES ON APPEAL…………………………………………………..xxiii

INTRODUCTION / SUMMARY OF ARGUMENT...………………………....1

STATEMENT OF THE CASE AND FACTS…………………………………..5

       A. <u>The Parties to this Appeal</u>……………………………………5

       B. <u>The "Stansell 2022" Appeal Involving These Parties</u>………...………7

       C. <u>After this Court Remands to the District Court, Judge Scola Sets the Matter for Jury Trial, But then Appellants Repeatedly Violate Judge Scola's Orders, Leading Him to Impose Rule 37 Sanctions</u>…………………………………...……….7

          *1. The Events Leading up to Appellants' **<u>First</u>** Willful Violation*……………………………………….…..7

          *2. The Events Leading up to Appellants' **<u>Second</u>** Willful Violation*……………………………….…11

          *3. The Events Leading up to Appellants' **<u>Third</u>** Willful Violation*……………………………….…12

          *4. The Events Leading up to Appellants' **<u>Fourth</u>** Willful Violation*……………………………….…15

5.  *Judge Scola's Response to these Intentional Violations*……..…..17

6.  *Even After Judge Scola Enters Default Against Lopez for Violations of Court Orders, Lopez's Companies Commit **Yet Another** Violation*………………………………..……....19

STANDARD OF REVIEW…………………………………………………21

SUMMARY OF ARGUMENT………………………………………………...24

ARGUMENT…..………………………………………………………….…24

I.   **The District Court Did Not Abuse its Discretion in Entering Default Judgment Because These Appellants Had Repeatedly Defied Court Orders, Their Defiance Was Willful, and No Sanction Other Than Entry of Default Would Have Actually Had the Effect of Penalizing These Appellants**……………………...24

     A. Appellants Defied *Repeated* Court Orders, Not Just One…………..27

     B. Judge Scola Correctly Found that Appellants' Violations Were Deliberate and Willful, a Finding that Appellants Themselves Effectively Admit on Appeal………………..………….…..………30

     C. Under the Particular Circumstances of Lopez's Fugitivity, No Sanction Short of Entry of Default Would Have Actually Had the Effect of Penalizing These Appellants…………………...…32

II.  **Appellants' Intentional Misconduct Was Not in Any Way Excused by the Mere Fact That They Had Filed Notices of Appeal from the District Court's Interlocutory Orders**….………………………..35

     A. Judge Scola's Interlocutory Discovery Orders Were Not Immediately Appealable, and Appellants' Notice of Appeal Was Just a Delay Ploy to Frustrate and Evade the Effect of Judge Scola's Orders…………………………………………...…35

     B. Even Assuming, *Arguendo*, That Judge Scola's Discovery Orders Were Immediately Appealable, That Still Could Not Justify Appellants' Defiance of Judge Scola's Pending Orders…….37

    1. *A Notice of Appeal is Not Self-Executing, Meaning A Litigant Still Must Comply With a Pending Order Unless and Until that Order is Stayed or Vacated, Neither of Which Happened Here*……………...……...…………37

    2. *Lopez's Post-Hoc "Justifications" For Defying Judge Scola's Orders are Baseless*…………….……….………..40

**III.    Appellants' Protracted Discussion of the Fugitive Disentitlement Doctrine ("FDD") is an Irrelevant Sideshow, Designed to Distract from Appellants' Willful, Repeated Violations of Court Orders**…..42

    A. <u>Whether or Not the District Court Properly Applied the FDD, Those Rulings Had No Effect Whatsoever on Appellants or on Their Obligation to Comply With the District Court's Orders</u>…..43

    B. <u>The District Court's Treatment of the FDD Question Was Entirely Reasonable and Nowhere Near Reversible Error</u>…..……44

      1. *Judge Scola's Measured, Middle-Ground Treatment of the FDD Issue was Entirely Reasonable*………………45

      2. *Affirming Judge Scola's FDD Ruling Would Not Create a Circuit Split*………………………………..48

      3. *None of Appellants' Constitutional Rights Were Violated By the District Court's Interlocutory Discovery Orders*………………………………….....50

      4. *Judge Scola's FDD Ruling was, at Worst, Harmless Error*……………………….……………..51

**IV.    If This Court Wishes to Reach Out to Decide the FDD Issue— Which It Need Not Do to Affirm in this Appeal—the FDD Issue Provides an Independent, Alternative Basis for Affirmance**…......52

CONCLUSION………………………………………………….................52

CERTIFICATE OF COMPLIANCE……………………………….......53

CERTIFICATE OF SERVICE…………………………………………………53

# TABLE OF AUTHORITIES

<u>CASES</u>

*Adolph Coors Co. v Mvmt. Against Racism & the Klan*,
777 F.2d 1538 (11th Cir 1985)……………………………………………27, 34

*Aztec Steel Co. v. Florida Steel Corp*.,
691 F.2d 480 (11th Cir. 1982)……………………………………….…33, 34

*Brown v. Braddick*,
595 F.2d 961 (5th Cir. 1979)…………………………………………....40

*Chudasama v. Mazda Motors Corp.*,
123 F.3d 1353 (11th Cir. 1997)…………………………………………....23

*Church of Scientology of Washington, D.C. v. Webster*,
802 F.2d 1448 (D.C. Cir. 1986)……………………………………………27

*Digital Equip. Corp. v.Desktop Direct, Inc.*,
511 U.S. 863 (1994).......................................................................xv, xvi, 37

*Ener v. Martin*,
987 F.3d 1328 (11th Cir. 2021)………………………………………….45, 46, 47

*Gates v. United States*,
752 F.2d 516 (10th Cir. 1985)…………………………………………..27

*Griffin v. Aluminum Co. of Am.*,
564 F.2d 1171 (5th Cir. 1977)…………………………………………..29

*Heptinstall v. Blount*, 3 F.3d 436
(5th Cir. 1993)……………………………………………………….…29

*Howat v. Kansas*,
258 U.S. 181 (1922)……………………………………………….……40

*Hyde & Drath v. Baker*,
24 F.3d 1162 (9th Cir. 1994)……………………………………………………27

*In re Grand Jury Proceedings*,
601 F.2d 162 (5th Cir. 1979)…………………………………………………....39

*In re Grand Jury Subpoena Duces Tecum* ,
955 F.2d 670 (11th Cir. 1992)………………………………………………….40

*In re Int'l Horizons*,
689 F.2d 996 (11th Cir. 1982)………………………………………………..xv

*In re Std. Metals Corp.*,
817 F.2d 625 (10th Cir. 1987)………………………………………………..27

*In re Steffen*,
660 F. Appx. 843 (11th Cir. 2016)……………………………………………27

*JYSK Bed'n Linen v. Dutta-Roy*,
No. 15-14859 (11th Cir. Oct. 20, 2017)……………………………………....38

*Lopez v. Bradley Smith, Acting Director of OFAC*,
No. 1:21-cv-01727-RBW  (D.D.C.)…………………………………………45-46

*Malautea v. Suzuki Motor Co.*,
987 F.2d 1536 (11th Cir.), *cert. denied*, 510 U.S. 863 (1993)………………...*passim*

*Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co., Inc.*,
768 F.3d 1320 (11th Cir. 2014)…………………………………………………xviii

*Maness v. Meyers* ,
419 U.S. 449 (1975)…………………………………………………………...39, 41

*Mishkin v. Gurian Trust*,
2008 WL 708733 (S.D. Fla. 2008)…………………………………………...19

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009)………………………………………………………xv-xvi, 37

*OFS Fitel, LLC v. Epstein, Becker & Green*,
549 F.3d 1344 (11th Cir. 2008)……………………………………………...??, 37

*Pesin v. Rodriguez*,
244 F.23 1250 (11th Cir. 2001)……………………………………………...48, 52

*Procup v. Strickland*,
792 F.2d 1069 (11th Cir. 1986) (*en banc*)…………………………………………xx

*RES-GA Cobblestone, LLC v. Blake Constr. & Develop't, LLC*,
718 F.3d 1308 (11th Cir. 2013)……………………………………………………40

*Sergeeva v. Tripleton Int'l Ltd.*,
834 F.3d 1194 (11th Cir. 2016)………………………………………………....38

*S.E.C. v. Ramzilovic*,
738 F.3d 14 (2d Cir. 2013)…………………………………………...…29, 34, 35

*S. New England Tel. Co. v. Global NAPs, Inc.*,
624 F.3d 123 (2d Cir. 2010)………………………………………………………34

*Stansell v. Revolutionary Armed Forces of Colombia ("Stansell 2014")*,
771 F.3d 713 (11th Cir. 2014), *cert. denied*, 136 S. Ct. 296 (2015)…………....…5

*Stansell v. Revolutionary Armed Forces of Colombia ("Stansell 2022")*,
14 F.4th 1340 (11th Cir. 2022)…………………………………………..…*passim*

*Stansell v. Revolutionary Armed Forces of Colombia*,
No. 22-13454 (11th Cir.)………………………………………………………ii

*Thornton v. Hospitality Mgmt. Assocs., Inc.*,
787 F.Appx. 634 (11th Cir. 2019)………………………………………..…..27

*United States v. Bescond*,
24 F.4th 759 (2d Cir. 2021)………………………………………………..…49, 50

*United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*,
126 F.3d 1314 (11th Cir. 1997)………………………………………………....29

*United States v. City of Hialeah*,
140 F.3d 968 (11th Cir. 1998)……………………………………………xviii

*United States v. DeFrantz*,
708 F.2d 310 (7th Cir. 1983)…………………………………………………27

*United States v. Hitchmon*,
602 F.2d 689 (5th Cir. 1979) (*en banc*)…………………………………………38

*United States v. Jean-Baptiste*,
395 F.3d 1190 (11th Cir. 2005)…………………………………………....47

*United States v. Samark Jose Lopez Bello et al.*,
S.D.N.Y. No. 19-cr-144…………………………………………………....5, 6, 47

*United States v. Shalhoub*,
885 F.3d 1255 (11th Cir. 2017)…………………………………………....49

*United States v. $239,500 in U.S. Currency*,
764 F.2d 771 (11th Cir. 1985)…………………………………...22, 25, 26

*U.S. Commodity Futures Trading Comm'n v. Escobio*,
946 F.3d 1242 (11th Cir. 2020)…………………………………………....38

*Van Cauwenberghe v. Bard*,
486 U.S. 517 (1988)…………………………………………………xvi

## STATUTES AND RULES

28 U.S.C. §1291……………………………………………………*passim*

28 U.S.C. §2111……………………………………………………....51

82 Fed. Reg. 11101 (Feb. 13, 2017)……………………………………………5

Fed R. App. P. 3(c)(4)…………………………………………...??

Fed. R. Civ. P. 30(a)(1)…………………………………………43

Fed. R. Civ. P. 37…………………………………………..*passim*

Fed. R. Civ. P. 61…………………………………………………………..51

Fed. R. Civ. P. 69(a)(1)…………………………………………………50

Fla. Stat. §77.07……………………………………………………...50

S.D. Fla. L.R. 26.1(h)………………………………………………….8

## ADDITIONAL MATERIALS

https://www.ice.gov/most-wanted. …………………………………………..3

https://www.ice.gov/news/releases/former-vice-president-venezuela-tareck-elaissami-and-venezuelanbusinessman-samark........................................................5

https://www.state.gov/samark-jose-lopez-bello/ …………………………..4

https://www.state.gov/transnational-organized-crimerewards-program-requests-information-to-bring-venezuelan-national-to-justice/..............................................6

## STATEMENT REGARDING APPELLATE JURISDICTION

Appellants' "Appellate Jurisdiction" section is only partially correct.

Appellants are correct insofar as they assert that this Court has appellate jurisdiction, pursuant to 28 U.S.C. §1291, over Appellants' appeal from the district court's final judgment issued November 4, 2022 (R-548). Appellants are also correct in their assertion that, because the November 4, 2022 judgment is a final, appealable order, all interlocutory orders of the district court "merge" into the final judgment and are now also subject to this Court's review. Fed. R. App. P. 3(c)(4).

Appellants are incorrect, however, when they then overreach to assert that, in addition to these jurisdictional bases, this Court also "has separate jurisdiction" to review two interlocutory discovery orders the district court entered—namely, (1) the district court's October 12, 2022 order denying Appellants' (first) motion for a protective order (R-523) (App.88); and (2) the district court's October 14, 2022 order denying Appellants' (second) motion for a protective order. R-527 (App.93) According to Appellants, these rulings are "independently reviewable" by this Court because "both orders constituted injunctions" and also because "both orders are reviewable under the Collateral Order Doctrine." Br.2. Neither of these assertions is correct.

However, before we expose those myths, the Court may be wondering: *Why does this even matter?* Indeed, if—as all parties acknowledge—this Court possesses

appellate jurisdiction over the final judgment and all interlocutory orders that merge into it, why bother considering whether *other, additional* bases for appellate jurisdiction exist?  Here's why:

There is *another* pending appeal that stems from this case, docketed in this Court as Appeal No. 22-13454.  That appeal was triggered by Appellants filing a Notice of Appeal from two interlocutory orders that, at the time, were not truly appealable orders: namely, the district court's two discovery orders denying Appellants' two separate motions for a protective order.[1]

As our Statement of the Case and Facts will explain in greater detail *infra*, Appellants filed that Notice of Appeal on Friday night, October 14, 2022, as a cynical ploy, seeking to frustrate and evade the district court's orders directing Appellant Lopez to be deposed the next business day (9:00am on Monday, October 17, 2022).  After filing that Notice of Appeal, Appellants then waited two days— until Sunday night, October 16, literally hours before Lopez' deposition was set to commence—to file in this Court a "Motion to Stay District Court Proceedings Pending Appeal."  Appellants' Mot. to Stay in *Stansell et al. v. Revolutionary Armed Forces of Colombia et al.*, 11th Cir. No. 22-13454 (filed Oct. 16, 2022).  Appellants

---

[1] The day after Appellants filed a Notice of Appeal, they filed a "Corrected Notice of Appeal" (R-530) that listed the exact same two orders in verbatim fashion as the original Notice of Appeal. For clarity's sake, we will refer to both filings simply as "the Notice of Appeal."

filed that stay motion—which was substantively meritless—to avoid subjecting themselves to ordinary, run-of-the-mill discovery and to avoid the commencement of a jury trial set which was set to begin on November 21, only 26 days from the date of the stay motion. Notably, Appellants did not label their stay motion as an "emergency" or even "time-sensitive one," underscoring the reality that their *true* motive was less a desire to receive a swift ruling on the motion, and more to drag things out and hopefully avoid altogether the practical effect of the district court's discovery and pre-trial/trial scheduling orders.[2]

Contrary to the characterization presented in Appellants' stay motion—and again now in the Appellate Jurisdiction section of their Merits Brief in the instant appeal—the two orders Appellants appealed from in the interlocutory appeal (No. 22-13454) were run-of-the-mill discovery orders that were not *immediately* appealable. All those two discovery orders actually did were two things: (1) they ordered Lopez to sit for a virtual (Zoom) deposition to take place on Monday October 17, 2022, rather than on Lopez's preferred date, Wednesday October 19,

---

[2] After Appellants filed their stay motion, we timely filed a Response. Appellees' Resp. to Motion to Stay, No. 22-13454 (filed Oct. 26, 2022). In today's appeal, Appellants ask this Court to incorporate by reference certain materials they filed in the No. 22-13454 appeal. *See* Br.3-4 n.1. To the same extent, Appellees hereby incorporate by reference two items we filed in the No. 22-13454 appeal, specifically: (1) our Response to Appellants' Motion to Stay (filed Oct. 26, 2022) and our Response to the Court's Jurisdictional Question of November 1, 2022 (filed November 15, 2022).

2022; and (2) they ordered Lopez to bring to the October 17 deposition, as *duces tecum* materials, certain documents that Appellants were *already obligated* to produce, pursuant to a pending Request for Production.  Neither of those rulings was in any way *immediately* appealable.

However, in both their stay motion (filed in their interlocutory appeal) and again now today in their Merits Brief, Appellants try to recast these routine—and non-appealable—discovery orders as something totally different, by seizing upon Judge Scola's language in the orders stating that he would not permit Lopez to benefit from his ongoing fugitivity by filing future motions "seeking affirmative relief from the Court." App.90.

But in the proper context of this litigation, that language was *illusory and functionally irrelevant*.  Judge Scola's Scheduling Order, which set the case for a jury trial and established other pre-trial deadlines, had *already* specified that the deadline for any party (including the Plaintiffs/Appellees) to file any pretrial motions was October 11 (R-512 at 1) (App.7), so by the time Judge Scola included the language about not filing motions "seeking affirmative relief" in his October 12 order, *both sides* were *already* beyond the motions cutoff date. *Nobody was allowed to file any motions at that point*.  The so-called "limitation" that Judge Scola assertedly put on Appellants' ability to file certain motions, based on Lopez's fugitivity, actually added *no additional limit* at all, in practical, real-world effect.

Accordingly, when viewed in its proper context, Appellants' Notice of Appeal in the interlocutory appeal (No. 22-13454) addressed *nothing more than* garden-variety, non-appealable discovery orders, and this Court lacked appellate jurisdiction over that appeal. *See, e.g., In re Int'l Horizons*, 689 F.2d 996, 1000-01 & n. 9 (11th Cir. 1982) ("As a general proposition most orders granting or denying discovery are not final orders . . . and therefore are not immediately appealable.") (cleaned up).

Not surprisingly, the parties' briefs regarding Appellants' request for an appellate stay triggered this Court to question its own jurisdiction. *See* Court's Jurisdiction Question (posed Nov. 1, 2022). The parties responded, and this Court has not yet ruled.

To summarize our Jurisdictional Response very briefly here, without restating its analysis in its entirety:

(1) Appellants' attempt to shoehorn Judge Scola's interlocutory, discovery orders into the Collateral Order Doctrine foundered for the same straightforward reason that the overwhelming majority of discovery orders are not immediately appealable—because they did not concern a completely "separate" and "important" issue, and they could be fully and fairly reviewed after a final judgment has ultimately issued. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (appealability of a collateral order should be determined "for the entire category to which a claim belongs."); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S.

100, 106 (2009) (same); *OFS Fitel, LLC v. Epstein, Becker & Green*, 549 F.3d 1344, 1369 (11th Cir. 2008) ("Congress has not statutorily authorized interlocutory appellate review for discovery motions, and for sound policy reasons—the preservation of district court integrity and the promotion of judicial efficiency dictates that parties should not be able to circumvent lower courts by seeking piecemeal appellate review." ).

Indeed, the very fact that Appellants today are trying to seek, *and indeed can get*, appellate review of those interlocutory, discovery rulings—within the context of this plenary appeal (No. 22-13798) from the district court's final judgment (which, in turn, necessarily includes all interlocutory rulings that merge into that final judgment)—demonstrates that the collateral order doctrine did not apply to Appellants' earlier, interlocutory appeal (No. 22-13454).   Those interlocutory, discovery rulings by Judge Scola could be fully and fairly reviewed after a final judgment had ultimately issued.   *See, e.g.*, *Van Cauwenberghe v. Bard*, 486 U.S. 517, 524 (1988) ("[T]he final judgment rule requires that, except in certain narrow circumstances in which the right would be 'irretrievably lost' absent an immediate appeal, litigants must abide by the district court's judgments, and suffer the concomitant burden of a trial, until the end of proceedings before gaining appellate review.") (internal citation omitted); *Digital Equip. Corp..*, 511 U.S. at 879-80 ("[I]t is one thing to say that the policy of §1291 to avoid piecemeal litigation should be

reconciled with policies embodied in other statutes or the Constitution, and quite another to suggest that this public policy may be trumped routinely by the expectations or clever drafting of private parties."). That is precisely what Appellants are getting here and now, in this plenary appeal (No. 22-13798), after a final judgment was issued.

(2) Along similar lines, Judge Scola's interlocutory, discovery orders cannot fairly be read as having "grant[ed]" an "injunction" as those terms are understood in the context of 28 U.S.C. §1291(a)(1). For one thing, Appellees never asked for an injunction or any sort of order precluding Appellants from filing motions; rather what we sought was *outright entry of judgment* based on the Fugitive Disentitlement Doctrine, but Judge Scola expressly refused to order that. R-536 at 4 (App.121) ("Preventing Mr. Lopez (and his companies) from defending themselves *at all* in this case, however, would be a step too far under the Eleventh Circuit's precedent.") (italics in original). Nor did Appellants even *contend*, until this Court mentioned the term "injunction" when it posed its Jurisdictional Question, that Judge Scola's interlocutory, discovery orders were an injunction; indeed, in their Civil Appeal Statement in the interlocutory appeal (No. 22-13454), they claimed this Court's appellate jurisdiction is founded on §1291(a)(1), but when given the options to characterize the "Type of Order" they appealed from, Appellants did not select

"Injunction." Appeal No. 22-13454, Appellants' Civil Appeal Statement at 1 (filed Nov. 18, 2022).

And even apart from any labels or categorizations, the reality is that, *in practical effect*, it is simply not an "injunction" for a trial court to simply enforce or amplify—or to simply remind the parties—of an extant deadline for filing all pretrial motions, which is *effectively* all that Judge Scola's orders did. *See Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co., Inc.*, 768 F.3d 1320, 1326 (11th Cir. 2014) ("[Section] 1292(a)(1) must be construed narrowly so as to limit the availability of interlocutory appeals in cases involving injunctions.") (quotation marks omitted); *United States v. City of Hialeah*, 140 F.3d 968, 973 (11th Cir. 1998) ("Congress did not intend for the injunction exception to open the floodgates to piecemeal appeals. The Supreme Court has repeatedly cautioned that the exception is a narrow one[.]") (quotation omitted).

Lest there remain any doubt that Judge Scola's October 12 and October 14 discovery orders did not function as some sort of injunction precluding Appellants from making filings in the case or in conducting discovery to proceed to trial, consider two additional Record facts:

First, Appellants themselves did not even treat these orders as any sort of injunction. Indeed, even well afterwards, Appellants *continued* making numerous filings in the case, including motions and other filings that requested various forms

of relief. *See* R-524 (Appellants' October 12, 2022 *Daubert* Motion to exclude or Limit Plaintiffs' Proposed Experts' Testimony); R-525 (Appellants' October 14, 2022 Emergency Motion for a Protective Order); R-540 (Appellants' October 25, 2022 Response in Opposition to Plaintiffs' *Daubert* Motion); R-541 (Appellants' October 25, 2022 Response in Opposition to Motion in Limine); R-545 (October 31, 2022 Joint Pre-trial Stipulation).  The fact that Appellants made these filings in the district court—even after Judge Scola told Appellants that he would not be granting any of Appellants' future motions seeking affirmative relief—serves to confirm that no *injunction* ever issued, and Appellants never acted as if one had been.  Thus, Appellants' suggestion today that they were somehow chilled from filing new motions, and thus Lopez was "enjoined . . . from his ability and right to defend himself by seeking relief from the district court" (Br.5), is mere empty rhetoric.[3]

Second, if Appellants felt they were being denied the opportunity to file some important motion, they could have made a record of that below by submitting a written proffer (e.g., "Your Honor, we want to file a motion that seeks the following specific relief, but we believe we are precluded from doing so."), or at least by mentioning the point elsewhere in one of their other, *non-motion* filings (example:

---

[3] Ironically, after the Scheduling Orders' deadline for the filing of motions passed (October 11), Appellees complied—never filing any motions—but it was *Appellants themselves* who simply disregarded that deadline, filing two post-October 11 motions.  R-524; R-525.

in the Pre-trial Stipulation: "FN.  Appellants' position on Issue X is the following:").

But Appellants never did anything of the sort.  Even today, while Appellants devote

nearly 8 pages of their Merits Brief to complaining about how they were supposedly

"denied" various Constitutional rights "to defend themselves," (Br.5-7, 40-44), they

never actually specify *what motions* they would have filed with Judge Scola, but for

the fugitive disentitlement language contained in his interlocutory orders—much

less, why any of such imaginary, unspecified motions would have actually been

meritorious or consequential had they been filed.[4]

* * *

Because this Court unquestionably has jurisdiction over the present plenary

appeal (No. 22-13798), all of the foregoing discussion about the interlocutory appeal

(No. 22-13454) may seem like an academic matter.  It is not.  This discussion of the

---

[4] *Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986) (*en banc*) does not alter the reality that neither of Judge Scola's interlocutory, discovery orders was an injunction—in name or in practical effect.  In *Procup*, this Court construed a district court order that was designed to prevent a party from filing pro se complaints as an injunction that was immediately appealable under §1292(a). *Id.* at 1070 n.1. Unlike Judge Scola's orders here, the district court order in *Procup* expressly stated that, unless the pro se plaintiff could demonstrate good cause otherwise, the court would enter "an injunction prohibiting him from filing any further pleadings in the courts of this district." *Id.* In stark contrast to that anti-filing injunction, Judge Scola's orders here never threatened an injunction; they did not functionally preclude Appellants from filing anything that was not *already precluded* (to both sides) by Judge Scola's extant pre-trial motions deadline; and they certainly did not prevent Appellants from proceeding to trial, nor did they bar Appellants from filing any new cases in the Southern District of Florida.  Thus, in a jurisdictional sense, the two cases are worlds apart.

interlocutory appeal (No. 22-13454) underscores the reality that Appellants used that appeal—essentially a frivolous appeal over which this Court had no jurisdiction at the time—and then also Appellants' overbroad stay motion in that appeal (a motion which sought to stay not merely the two orders appealed-from, but indeed "all district court proceedings" pending appeal), as a ploy to avoid the practical effect of Judge Scola's pending orders regarding both discovery *and the impending trial date*. This all helps explain Judge Scola's eventual finding of the *willfulness* of Appellants' violations.

Indeed, despite Lopez having told this Court last year, in the context of the *Stansell 2022* appeal (Appeal No. 20-11736), that he just wanted the opportunity for a jury trial to demonstrate that he was simply a wrongfully-accused "innocent billionaire businessman in Venezuela"—rather than the frontman for the narcotics Kingpin Vice-President of Venezuela, Tarreck El-Aissami, who was enabling the narcotrafficking operations of a foreign terrorist organization, the FARC, as the U.S. Treasury Department and Department of Justice maintain (and as the district court previously concluded after a full-day evidentiary hearing)—the reality is that, after this Court remanded the case back to the district court, and after Judge Scola scheduled a jury trial, Lopez apparently didn't *actually* want that jury trial to occur.

So, rather than face the music to a jury, Lopez repeatedly stonewalled and delayed—and then ultimately defied and violated—Judge Scola's orders. In the

final analysis, Lopez blew off his scheduled deposition—*twice*—despite Judge Scola's repeated, explicit court orders warning him that doing so would risk his (and his companies') default. And neither Lopez nor his companies ever complied with *any* requests for written discovery, failing to produce to us *even a single document*. No objections interposed by Appellants, no attempts at "partial" compliance made— just: *nothing*. Instead they tried to get out of the impending November 21 jury trial altogether, by filing the interlocutory appeal; by asking this Court to stay indefinitely "*all proceedings*" in the district court; and by continuing their defiance of Judge Scola's orders. In the face of these brazen, willful violations of multiple court orders, Judge Scola's decided that imposition of sanctions was entirely appropriate.

Thus, in the final analysis, while this Court can exercise, pursuant to 28 U.S.C. §1291, appellate jurisdiction over Judge Scola's final judgment, as well as all interlocutory orders that merge into that judgment, the Court should do so *within the context of this appeal* (No. 22-13798)—*rather than within the context of Appellants' interlocutory appeal* (No. 22-13454). And this Court should conduct its appellate review here fully cognizant of the gamesmanship and jurisdictional sleight-of-hand that Appellants have attempted.

# ISSUES ON APPEAL

1. Whether the district court abused its discretion in entering default judgment where these Appellants had repeatedly defied court orders, where their defiance was willful, and where no sanction *besides* entry of default would have actually had the effect of penalizing these Appellants?

2. Whether Appellants' willful misconduct was somehow excused by the mere fact that they had filed a Notice of Appeal challenging the interlocutory orders they then defied?

3. Although it is not necessary to decide this appeal, whether the district court abused its discretion in its rulings regarding the Fugitive Disentitlement Doctrine?

4. If this Court does wish to reach out to decide the Fugitive Disentitlement Doctrine issue, whether that doctrine provides an independent, alternative basis to affirm?

## <u>INTRODUCTION / SUMMARY OF ARGUMENT</u>

Appellants' Brief is a paragon of misdirection.  The brief devotes only the final 9 pages of a 55-page brief to addressing the only *necessary* issue on appeal—namely, whether the district court (Scola, J.) abused its ample discretion by entering default judgment against Appellants after they engaged in repeated, willful violations of the district court's discovery orders.  The reason why Appellants have buried this central point is obvious: because Appellants' repeated violations of Judge Scola's orders were intentional and inexcusable, and Judge Scola was well within his discretion by finding the violations to have been *willful* and then issuing the default.

Indeed, Appellants' appellate brief *concedes* that Appellant Samark Jose Lopez Bello's act of completely blowing off his court-ordered deposition was his *conscious choice*, not some inadvertence.  In Appellants' strange view, litigants get to set their own rules and decide which court orders they will and won't comply with.  Judge Scola held otherwise and imposed the only sanction that would actually have any teeth against these Appellants—entry of default judgment.

To distract from that simple reality—and a quick, simple affirmance—Appellants devote the first 46 pages of their brief to kicking up dust and constructing an elaborate sideshow.  That sideshow concerns the Fugitive Disentitlement

Doctrine ("FDD"): namely, whether the FDD applied below and whether it applies now on appeal.

To be perfectly clear: although Lopez certainly is a fugitive from American justice—this Court explicitly found that last year, *Stansell et al. v. Revolutionary Forces of Colombia et al.* ("*Stansell 2022*"), 45 F.4th 1340, 1348 (11th Cir. 2022)—Judge Scola did not issue his default order *because* Lopez is a fugitive. Indeed, Judge Scola explicitly *refused* to enter default on the basis of the FDD. Lopez's litigation misconduct—and that of his companies—was egregious, no matter if it had been done by a fugitive or by anybody else. Appellants willfully defied repeated court orders—*full stop*. Imposing sanctions was entirely appropriate.

Thus, to resolve this appeal, this Court need not wade into the thicket of whether the FDD applies to civil defendants, an issue about which this Court said last year "we have cases going both ways as to whether the doctrine can and should apply to litigants who are defending civil lawsuits." *Stansell 2022*, 45 F.4th at 1348. Nor does this Court even need to decide whether the particular FDD limitation Judge Scola decided to craft—i.e., declining to enter default based on the FDD and permitting Lopez and his companies to defend themselves on the merits at a rapidly-approaching jury trial, but precluding them from filing future motions seeking affirmative relief until Lopez ended his fugitivity—was proper.

The reason this Court need not "go there" is because Judge Scola's limitation was illusory anyway. By the time Judge Scola imposed this "no affirmative motions" limitation—via his October 12, 2022 order (R-523)—the motions deadline from his Scheduling Order had *already* elapsed the day before (October 11), so at that point *no party* was permitted to file *any motions* anyhow. R-512 at 1 (setting the deadline for "the filing of pretrial motions, including motions in limine and *Daubert* motions" at "October 11, 2022"). In other words, despite all the Sturm-and-Drang in Appellants' appellate brief about how they were supposedly "prejudiced" by the FDD ruling "precluding" their motion practice—indeed how such a ruling "denied them Due Process" and "fundamental fairness" and also their "First Amendment right of access to the court"—it is all just empty rhetoric. Judge Scola's ruling did no such thing. The motions deadline for everybody had already elapsed the day before, so there was zero prejudice to Appellants.

There is really *only one way* in which Lopez's fugitivity is directly relevant to this appeal. Lopez's fugitivity is relevant in that he is not just any run-of-the-mill fugitive from American justice. In 2019, he was placed on ICE's list of Most Wanted Fugitives for his participation in "international narcotics trafficking[.]" https://www.ice.gov/most-wanted. In 2020, the State Department announced "a reward of up to $5 million for information leading to the arrest and/or conviction of Venezuelan national Samark Jose Lopez Bello for participating in transnational

organized crime." Formal Press Statement of U.S Secretary of State (Oct. 8, 2020) (https://www.state.gov/samark-jose-lopezbello/). But most relevant to this appeal, he is a fugitive *who has admitted that he is currently in Venezuela*, a country with no extradition treaty with the United States.

This is highly relevant because it bears upon the question of *what sanction* was appropriate in light of Appellants' willful, repeated violations of court orders. It is certainly true that, under Rule 37, a trial court should not issue any sanction that is more severe than necessary, and that some sanction short of default should always be considered first before imposing a default. But that's exactly what Judge Scola did here. He ultimately concluded that, from Lopez's safe haven in Venezuela, Lopez and his companies could have evaded *any other* sanction—even a contempt of court citation. Indeed, all of Lopez's U.S.-based funds had *already* been frozen by the Treasury Department, and he had *already* been evading arrest on pending U.S. felony charges for over three years. The only real penalty left available to Judge Scola under these circumstances was entry of default judgment. Accordingly, Judge Scola did not abuse discretion by entering that sanction.

This Court should affirm.

## STATEMENT OF THE CASE AND FACTS

A.    The Parties to this Appeal

The Plaintiffs/Appellees in this appeal today are the same Plaintiffs/Appellees from the previous *Stansell* appeals in this Court, who are still attempting to secure various blocked assets to satisfy their Anti-Terrorism Act ("ATA") Judgment.  *See Stansell v. Revolutionary Armed Forces of Colombia ("Stansell 2014")*, 771 F.3d 713, 721-23 (11th Cir. 2014).

One of the individuals whose blocked assets we have been pursuing is Appellant Lopez.  Lopez is a designated Kingpin according to OFAC, 82 Fed. Reg. 11101 (Feb. 13, 2017); he is a fugitive from a pending indictment in the Southern District of New York, having been indicted for criminal violations of the Kingpin Act, S.D.N.Y. No. 19-Cr-144; and he is a member of I.C.E.'s Top-10 "Most Wanted" List, "the subject of a months-long manhunt following the takedown of a complex international sanctions-evasion and money laundering operation." https://www.ice.gov/news/releases/former-vice-president-venezuela-tareck-elaissami-and-venezuelanbusinessman-samark.

In 2020, the  U.S. Secretary of State personally announced "a reward of up to $5 million for information leading to the arrest and/or conviction of Venezuelan national Samark Jose Lopez Bello for participating in transnational organized crime." Formal Press Statement of U.S Secretary of State, "Transnational Organized

Crime Rewards Program Requests Information to Bring Venezuelan National to Justice" (Oct. 8, 2020) (available online at https://www.state.gov/transnational-organized-crimerewards-program-requests-information-to-bring-venezuelan-national-to-justice/). Accompanying the State Department's $5 million reward offer, the Department of Homeland Security issued the following poster:



Just last year, at Oral Argument in this Court, his counsel admitted that Lopez remains a fugitive, R-513-4 at 7 (Tr. of Oral Arg. in 11th Cir. No. 20-11736 (Feb. 9, 2022)), and this Court so held in its ensuing opinion. *Stansell v. Revolutionary Armed Forces of Colombia ("Stansell 2022")*, 14 F.4th 1340, 1348 (11th Cir. 2022).

However, in late 2022, Lopez filed a motion to dismiss the criminal indictment admitting he is currently residing in Venezuela, a country which will not extradite him to the United States, as a Venezuelan citizen. *United States v. Samark Jose Lopez Bello et al.*, S.D.N.Y. No. 19-cr-144, D.E. 255 at 1 (Sept. 16, 2022).

B. The "*Stansell 2022*" Appeal Involving these Parties

Last year, the Court (by published opinion) left undisturbed the turnover of Lopez's waterfront mansion in Coral Gables to these Plaintiffs, but also held that, as to certain of Lopez's OFAC-blocked bank accounts, because Florida Statutes §77.08 mandates a jury trial when there is a material fact in dispute, and that such a dispute still remained on the question of whether Lopez and his companies are each an "agency or instrumentality" of the FARC, remand for a jury trial was required. *Stansell 2022*, 45 F.4th 1340. The Court's opinion also directed that, upon remand, Judge Scola should decide in the first instance whether or not to apply the Fugitive Disentitlement Doctrine ("FDD"), and that his FDD decision would then be subject to "abuse-of-discretion" review on appeal. *Id.* at 1348.

C. After Remand to the District Court, Judge Scola Sets the Matter for Jury Trial, But then Appellants Repeatedly Violate Judge Scola's Court Orders, Leading Him to Impose Rule 37 Sanctions.

Five days after this Court remanded pursuant to the *Stansell 2022* mandate, Judge Scola set the jury trial to commence on a fast-track, to begin in approximately eight weeks' time, on November 21, 2022. App.7. Ever since then—even though a jury trial was explicitly what Lopez had asked this Court for in *Stansell 2022*—Appellants endeavored mightily to avoid discovery and the jury trial. These efforts by Appellants included brazen, repeated violations of Judge Scola's orders.

1. *The Events Leading up to Appellants' **First** Willful Violation*

• <u>Monday, September 26</u>: Judge Scola issued his Scheduling Order, setting the jury trial to begin on November 21, and imposing various pre-trial deadlines. App.7. Significantly, among these deadlines was the deadline for "the filing of pretrial motions, including motions in limine and *Daubert* motions" of "October 11, 2022[.]" *Id.*

Later that same day (September 26), we filed a "Motion for Entry of Final Judgment on All Outstanding Writs Based on the Fugitive Disentitlement Doctrine" ("the FDD Motion"). R-513.

• <u>Wednesday September 28</u>: We issued to Lopez a Notice of Taking Deposition of Party, which specified that Lopez's deposition would commence "Wednesday, October 12, 2022 at 9:00am EST" in Miami, and that Lopez must appear "upon oral examination, in person and physically present in this district, and not by any telephone, Zoom, video conference, or other electronic remote appearance method[.]" R-517 at 1. This Notice complied with all applicable Rules, including the Southern District of Florida's requirement that 14-days' notice be provided. S.D. Fla. L. R. 26.1(h).

• <u>Thursday October 6</u>: Lopez made it clear that he intended to flout the deposition notice. His counsel wrote to Appellees on October 6, 2022, stating flatly: the "in-person deposition for Mr. López in Miami on October 12, 2022 *cannot and will not be honored*. Mr. López *will not be appearing*." R- 517-2 (emphases added).

Then Appellants inexplicably waited an *additional* four days to file a motion for protective order.

• Friday October 7:  Appellants sought a continuance of the November 21 trial date. R-514.  Based on our belief that a ruling by Judge Scola on our pending FDD motion might obviate any need for a jury trial, and that otherwise there might not be time to secure a ruling on our FDD motion, we agreed to join in the continuance motion.

• Monday October 10:  At 6:45pm this evening (the Columbus Day holiday)—the 12th day after we had noticed Lopez for deposition—Appellants filed their first motion for protective order, trying to prevent Lopez's October 12 deposition from occurring.  R-516.  The motion did not even purport to be an "emergency" or even "time-sensitive," not did it offer a reason for its delayed filing.

Nowhere in the motion did Lopez (or anybody else) assert that the noticed deposition date, time, or location (9:00am October 12 at the court reporter's office in Miami) was in any way a problem, either for Lopez or his counsel.  There was no assertion of "unavailability" or even "inconvenience"; indeed, the only substantive argument advanced in the motion was that *no discovery whatsoever* should be permitted in the case.  *Id.*

• <u>Tuesday October 11</u>:  We filed a response to Lopez's motion. R-517. Notably, none of our arguments depended in any way on the FDD; rather, we explained that the motion was substantively meritless.  *Id.*

Later that same day, Judge Scola denied the pending motion to continue the trial. R-518.

At 11:59pm that same night (October 11), the Judge Scola's motions deadline from his Scheduling Order elapsed, meaning no pre-trial motions would be permitted—*from any party*—from that point forward.  We complied with this deadline; Appellants did not.

• <u>Wednesday October 12</u>:  The deposition was noticed for 9:00am that morning, and when Lopez failed to appear by 9:30am, the court reporter promptly issued a Certificate of Non-Appearance (CNA). R-531-1.  At exactly 9:35am, Judge Scola issued one of the orders from which Appellants have now taken this appeal: his order (R-523) (App.88) denying Appellants' first motion for protective order. Unbeknownst to Judge Scola at the time, Lopez had *already* blown off the deposition for which he had sought the protective order, just as he had defiantly warned he would do several days earlier.

Judge Scola's 9:35am order denied Appellants' motion, but also set the deadline for a new, remote appearance deposition to occur within 7 days.  R-523. *Significantly, as Judge Scola carefully explained in his order, the basis for his ruling*

10

*had nothing to do with the FDD; rather he was denying the motion for protective order based on its utter lack of any substantive merit.*  App.88-89.

Judge Scola's order then proceeded further, noting *an alternative basis* for his denial of the motion, namely the FDD.  App.90 & n.2.

Then, in the "Conclusion" section of his order, Judge Scola specifically ordered Lopez to appear for his deposition, ordered Lopez and his companies to timely respond to the other discovery requests that had been propounded on them, and, ominously, Judge Scola included an explicit warning to Appellants that their failure to comply **"will"** lead to sanctions, up to and including entry of default. App.92 (bold in original).

Notwithstanding this strong warning from Judge Scola, and despite Lopez having flouted the earlier in-person deposition notice, this order from Judge Scola was, in some respects, quite generous to Lopez. It afforded Lopez a new lease on life, extending the deposition deadline for an additional 7 days, and it sided with Lopez—not Appellees—on whether Lopez could appear virtually, rather than in-person, for deposition. R-523.

### 2.  *The Events Leading up to Appellants' <u>Second</u> Willful Violation*

Still on October 12, the same day Judge Scola issued this order extending the deposition deadline—indeed just four hours later, at 1:33pm—Appellees' counsel wrote an email to Appellants' counsel, stating:

All: *This commences our efforts* at mutual coordination of Mr. Lopez Bello's appearance for deposition in the short "within seven (7) days" time frame as set forth in Order DE 523 this morning. Accordingly, pursuant to Judge Scola's order from this morning (DE 523), please see the attached Court Ordered Re-Notice for Mr. Lopez Bello's deposition duces tecum to commence next Monday, October 17, 2022 at 9:00am EST. *Plaintiffs are not wedded to this exact time, so if the start time is problematic on your end, please let us know in writing by close of business today*.

R-526-1 (emphases supplied).

Two hours later, at 3:42pm, having heard nothing from any of Appellants' lawyers, we wrote again to them by email, providing additional logistical details for the Zoom deposition. R-526-2.

Despite our request for counsels' input by the close-of-business that day, we did not hear back from any of Appellants' lawyers until the following morning.

But even before that response from Appellants' lawyers, that same day (October 12) Appellants committed a second violation of Judge Scola's orders. Recall that Judge Scola's Scheduling Order had set an October 11 deadline for "the filing of pretrial motions, including motions in limine and *Daubert* motions." R-512 at 1. We complied, filing our motions in limine (R-521) and our *Daubert* motion (R-522) on October 11. Appellants, however, blew through this deadline and filed their *Daubert* motion on October 12. R-524.

3. *The Events Leading up to Appellants' **Third** Willful Violation*

- <u>Thursday October 13</u>:  Appellants' counsel finally responded to our two emails seeking their input on the re-noticed October 17 date for Lopez's deposition. At 8:57 am, Jeffrey Scott, Esq. sent the following email:

> Counsel: [Appellants' co-counsel] Adam [Fels] is traveling –Monday or Tuesday of next week does not work. We propose the new date of Wednesday October 19, which comports with the Court's Order. We should also have a translator as well. The deposition is subject to the limitations set forth in the Federal Rules of Civil Procedure.

R-526-3 (bracketed material supplied for clarity).

Later that same day (October 13) at 1:54pm, Mr. Scott emailed us a 2-page letter, not mentioning any further details about Mr. Fels' asserted travel, but instead now objecting to the *duces tecum* requests attached to the Court Ordered Re-Notice of Deposition. R-526-4. Mr. Scott's email requested that we provide a response by 5:00pm the same day. *Id.* At 4:30pm we responded to Mr. Scott by email, advising him, *inter alia*, that the deposition would proceed as noticed, and that the *duces tecum* was fully consistent with Rule 30(b)(2) and Rule 34.  R-526-5.

- <u>Friday October 14</u>:  This was the final business day before Lopez's scheduled deposition, set to commence at 9:00am the following Monday, October17. At 12:39 pm, Appellants filed their second motion for a protective order, this time labeled as an "Emergency Motion." R-525. Despite our having gotten back to Appellants' counsel 30 minutes before his requested 5:00 p.m. Thursday deadline,

Appellants again delayed and waited until the proverbial eleventh-hour to file this new "emergency" motion.

Time being of the essence, we filed our response to Appellants' "emergency" motion 32 minutes later, at 1:11pm.  R-526.  Among other things, we noted that Appellants had proposed literally only one day that supposedly "worked" on their end—*the final day* of the 7-day period specified in Judge Scola's October 12 order—and on that particular day, a key member of our side's legal team was scheduled to be unavailable due to travel, so the notion of any single lawyer's availability was a wash.  *Id.* at 5 n.2.

At 2:20 pm, Judge Scola denied the "emergency" motion. R-527. As we will detail momentarily, just like his previous order denying a protective order, Judge Scola specified on the merits that Lopez Bello's fugitivity was *merely one of two alternate bases* for his ruling. App.93.

But before we quote the salient portions of Judge Scola's order, one other fact bears mention here:  To our surprise, at 1:06 pm—before Judge Scola had issued his order denying the "emergency" motion—Lopez's counsel sent us a separate email, adding a statement revealing ongoing willful intent not to comply: "Please be advised that this is our final notice to you that Mr. Lopez *will not be appearing* for a deposition as noticed on Monday October 17, 2022." R-531-2 (emphasis added). Appellants never told Judge Scola that Lopez had flatly *refused* to attend.

14

In his 2:20pm order—i.e., Judge Scola's second time denying a motion from Appellants for a protective order—Judge Scola once again stated that his principal basis for denying the motion was that it was substantively baseless. App.93. Indeed, his order noted that Appellants' motion had not even bothered to include any asserted argument for relief. *Id.* at 1 & n.1. As with his earlier order on October 12, Judge Scola then went on to provide an additional, independent rationale for denying Appellants' "emergency" motion, namely, the FDD. App.93-94.

Judge Scola then sternly and explicitly ordered Lopez to appear for the deposition the following Monday morning: "Mr. Lopez will appear for his deposition on October 17, at 9:00 A.M. Eastern time, as noticed, unless the parties agree otherwise." App.94.[5] As if all this wasn't clear enough, at the end of his order Judge Scola returned to this point again, explicitly warning Appellants (in bold yet again) that if they failed to comply, he **"will"** impose sanctions, up to any including entry of default. App.94.

### 4. The Events Leading up to Appellants' **<u>Fourth</u>** Willful Violation

Four hours after Judge Scola issued his 2:20pm order—at 6:18 pm on Friday night October 14—Appellants filed a Notice of Appeal and then a "corrected" Notice (R-529 & R-530), appealing from Judge Scola's two discovery orders, i.e., the

---

[5] Regarding our *duces tecum* requests, Judge Scola applied similar reasoning to hold that Appellants' generalized objections were substantively meritless. App.94.

October 12 order (R-523) denying Appellants' first motion for protective order, and the October 14 order (R-527) denying Appellants' second motion for protective order.

• Sunday October 16: Because Judge Scola's October 14 order specified that the October 17 deposition would commence at 9:00am, we—not wanting later to be falsely accused by Appellants of "unfair surprise"—emailed Appellants' counsel at 6:21pm, confirming that we would be proceeding with the deposition as scheduled and as ordered by Judge Scola. R-531-3.

Two and half hours later, at 8:41pm, Appellants' counsel, Mr. Fels, emailed us, asserting his Notice of Appeal was valid and stating: "As we told you several days ago, Mr. Lopez *will not be appearing at the deposition*.*** Mr. Lopez *will not be appearing* at any deposition until the appeal is heard." R-531-4 (emphasis supplied).

We responded to Mr. Fels by email at 9:15 pm that same night (Sunday October 16), stating: "The deposition will proceed tomorrow morning at 9:00am, as scheduled." R 531-6.

• Monday October 17:  No stay was ever issued, either by Judge Scola or by this Court.  At 9:00am, Lopez failed to appear again. His attorney, Mr. Fels—apparently not "traveling," as he had previously told Judge Scola—showed up on the Zoom call and said the district court had been divested of jurisdiction because of

the October 14 filing of Appellants' Notice of Appeal. Lopez was never present on the Zoom call at all. No documents were produced.  Because Lopez had not appeared by 9:30am, the Court Reporter issued a Certificate of Non-Appearance (CNA). R-531-7. *This was Lopez Bello's second CNA in less than a week.  This was Appellants' **fourth** violation of a court order.*

*5.  Judge Scola's Reaction to These Intentional Violations*

Later that same day (October 17), we advised Judge Scola of the recent events. R-531.

• <u>Tuesday October 18</u>:  By way of a 6-page written order, Judge Scola ruled on the pending FDD motion.  R-536 (App.118).  Specifically, he denied our motion "for entry of final default judgment" based on the FDD, but he "**enter[ed] default judgment** against Defendant **Samark Jose Lopez Bello** as sanctions for Mr. Lopez's failure to appear at his scheduled deposition and failure to comply with the Court's orders. Fed R. Civ. P. 37(b)(2)(A)(ii), (vi), (d)(1)(A)(i)." App.122 (bold in original).

Although the entirety of Judge Scola's 6-page order bears reading, we highlight certain key points here:

<u>*First*</u>, Judge Scola ruled that he was denying our FDD motion, which had sought entry of default against Appellants on all outstanding writs based on Lopez's ongoing fugitivity, along with this Court's FDD precedents.  App.121.

17

_Second_, Judge Scola reiterated what he had said in both of his earlier orders denying Appellants' two motions for protective order, which was that he had denied each of those motions for two independent, alternative reasons—one reason being that each motion was substantively meritless, and the other, alternate reason being that he would not be granting any of Lopez's motions that sought affirmative relief until Lopez ended his fugitivity.  App.119.

_Third_, Judge Scola summarized the factual chronology regarding the discovery dispute between the parties and found: "In spite of the clear directive in the Court's order, and without seeking a stay from this Court, Mr. Lopez failed to appear for his deposition despite the Court's multiple orders requiring him to do so. . . . And, unbeknownst to the Court at the time it issued its original decisions on the motions for protective orders, Mr. Lopez had already previously failed to appear for deposition on the date noticed by Plaintiffs."  App.119.

_Fourth_, throughout his order, Judge Scola specifically found that Lopez's violation was not merely an isolated, one-off situation, but rather that Appellants had _repeatedly_ violated his unambiguous orders.  App.120-123.

_Fifth_, based on this clear pattern of Appellants' violations of his orders, Judge Scola specifically found that Appellants' violations were willful:

> The Defendants' ongoing gamesmanship and disregard of the Court's orders demonstrate that the violation here is willful and therefore deserving of sanctions. _See Malautea_, 987 F.2d at 1542 (affirming sanctions where the defendants "willfully violat[ed] the court's three

18

clear orders"); (Reply at 1; Cert. of Non-Appearance dated Oct. 12, 2022, ECF No. 531-1.)

App.123.

*Sixth*, Judge Scola specifically recognized that his ability to enter the Rule 37 sanction of default judgment was necessarily circumscribed under this Court's guidelines—namely, default could only be entered if no other sanction would suffice under the circumstances—but Judge Scola specifically found that standard was satisfied here:

> To enter a default judgment as a sanction under Rule 37, a court must find "a willful or bad faith failure to obey a discovery order." *Id.* [*Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993)]. "Finally, the severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Id.* *** [T]he Court generally lacks an ability to compel Mr. Lopez to obey its orders and require him to participate in discovery based on the Defendants' conduct and Mr. Lopez's fugitive status. (Reply at 1; Lopez Dep. At 4:7-9.) In light of his conduct to date, the Court finds that less severe sanctions would not ensure compliance with its orders and "can think of no other sanction that would adequately punish and deter this conduct." *Mishkin*, 2008 WL 708733, at *6. Therefore, the Court enters default judgment against Defendant Samark Jose Lopez Bello.

App. 120, 122.

*6.   Even After Judge Scola Entered Default Against Appellant Lopez for Violations of Court Orders, Lopez's Companies Commit **Yet Another** Violation of a Court Order*

In the final paragraph of his order defaulting Lopez, Judge Scola noted that there remained the issue of what to do with Lopez's companies, who at that point

remained in the case.  App.122-23. Because the Corporate Appellants were still in the case, their obligation to comply with Judge Scola's orders, of course, remained. They obviously realized this because they continued making filings in the case even after their principal (Lopez) had been defaulted.  *See* R-539 (Response to Show Cause Order); R-540 (Response to Plaintiffs' *Daubert* Motion); R-545 (Joint Pretrial Stipulation).

However, the Corporate Appellants simply flouted their deadline to respond to the Requests for Production we had propounded September 29.  R-546, Exh. 1-3; R-558.  The deadline for them to respond was October 31, but they flouted this obligation, and produced *nothing*.  Not a single document.  No legal objections asserted.  Just complete defiance.  This was yet another—indeed the **<u>sixth</u>**—willful violation of Judge Scola's orders, as he had specified in both of his orders.

On November 1 we informed Judge Scola of this sixth, most recent violation, R-546, and later that same day, he entered default judgment against the Corporate Appellants as well.  R-547.  Three days later, pursuant to Rule 58, Judge Scola formally entered final judgment in our favor.  R-548.

Appellants then filed an "Amended Notice of Appeal" (R-549), triggering this appeal.

## STANDARD OF REVIEW

Appellants' appellate brief misstates the applicable standard of review in several instances.  The abuse of discretion standard applies to all issues in this appeal.

I.  Regarding the central issue in this appeal—namely, whether the district court committed reversible error by entering default judgment against Appellants—the proper standard of review is abuse of discretion.  *E.g.*, *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir.), *cert. denied*, 510 U.S. 863 (1993).

Appellants' brief initially pays lip service to this deferential standard, *see* Br. 18-19, but then seeks to back away from it by arguing: (1) that these actually were *not* discovery orders (*e.g.*, *id.* at 18 n.3 & 48); (2) that here Judge Scola had *no discretion to impose any sanction at all* because he had been divested of jurisdiction over the matter entirely as a result of Appellants' filing of Notices of Appeal challenging his interlocutory orders (*id.* at 46-47); and (3) that the scope of Judge Scola's discretion was necessarily bounded by "the propriety of [his] earlier compel order." *Id.* at 55.

These attempts by Appellants to dance around (or completely gut) the highly-deferential abuse-of-discretion standard of review fail.

*First*, as our Argument section explains *infra*, these most certainly *were* discovery orders, indeed run-of-the-mill orders denying motions for protective

order, and compelling Lopez to appear for his deposition and for Appellants to produce documents. The only aspect of these routine discovery orders that was in any way unusual was their *expressly alternate, independent* stated basis for denying Appellants' requests for a protective order, namely, that Lopez, a fugitive from American justice, should be precluded from seeking affirmative relief by way of filing motions until he ends his fugitivity. That does not alter the reality that they were *discovery orders*, and thus meriting the typical abuse of discretion review.

*Second*, our Argument section explains *infra*, that Appellants' Notice of Appeal did not alter Judge Scola's discretion to enforce his pending orders. The discovery orders that Appellants had appealed from were not immediately appealable, but even assuming, *arguendo*, they were, that still did not alter Appellants' obligation to comply with them. Judge Scola's orders were never stayed or vacated, so they remained in full effect. Accordingly, when Appellants violated those orders (and indeed other orders), Judge Scola retained his full range of discretion to impose sanctions, and his exercise of that discretion is reviewed on appeal for abuse. *United States v. $239,500 in U.S. Currency*, 764 F.2d 771 (11th Cir. 1985).

*Third*, the notion that Judge Scola's discretion was somehow constrained by the propriety of his earlier discovery orders goes nowhere, from a standard of review perspective, because that review itself is for the same, deferential abuse of discretion

standard. *Chudasama v. Mazda Motors Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997). The question is not whether this Court would have ruled the exact same way that Judge Scola did; rather, the operative question is whether those rulings so exceeded Judge Scola's considerably wide berth. *Stansell 2022*, 14 F.4th at 1362.

II.    The issue of whether Appellants' willful violations were somehow excused by virtue of the fact that they had filed a Notice of Appeal merits abuse of discretion review. As just noted, whether or not the discovery orders appealed-from were immediately appealable, it is beyond dispute those orders were never stayed or vacated, so Appellants had to comply with them. When they did not, Rule 37 afforded Judge Scola discretion to craft an appropriate sanction, and review of such sanctions is for abuse of discretion.

III.    Regarding the Fugitive Disentitlement Doctrine issue—if this Court even decides it wishes to reach that question—Appellants incorrectly argue that "the standard of review is *de novo*." Br at 18. This Court unmistakably stated in *Stansell 2022* that Judge Scola' ruling on the FDD issue would be reviewed for abuse of discretion. *Stansell 2022*, 14 F.4th at 1348.

## SUMMARY OF ARGUMENT

A Summary is contained in the Introduction, *supra* at 1.

## ARGUMENT

This Court should affirm for a simple, straightforward reason: because the district court (Scola, J.) did not abuse its ample discretion when it entered default judgment against Appellees, after they willfully and repeatedly violated the court's orders, and where no sanction *besides* default would have actually had any effect of punishing these Appellees. Because Appellant Lopez is a fugitive from American justice who is currently in Venezuela, a country that will not extradite Lopez, Lopez and his companies could have evaded any other sanction besides default. Accordingly, Judge Scola did not abuse his discretion by entering that sanction.

### I. The District Court Did Not Abuse its Discretion in Entering Default Judgment Because These Appellants Had Repeatedly Defied Court Orders, Their Defiance Was Willful, and No Sanction Other Than Entry of Default Would Have Actually Had the Effect of Penalizing These Appellants

Federal Rule of Civil Procedure 37 authorizes courts to prohibit parties from supporting their defenses, strike parties' pleadings, and enter default judgment against parties that fail to participate in discovery. Fed. R. Civ. P. 37(b)(2)(A) (ii), (iii), (vi), (d)(1)(A)(i). As Judge Scola expressly acknowledged in his order defaulting Lopez:

> This rule gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders; however, discretion is

guided by judicial interpretation of the rule." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993). To enter a default judgment as a sanction under Rule 37, a court must find "a willful or bad faith failure to obey a discovery order." *Id.* "Finally, the severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Id.*

App.120.

Once a district court has made findings of willfulness and no-effective-alternative-sanction to default, this Court has been extremely deferential in its review, cognizant district judges should not have their hands tied as they try to police the conduct of the litigants to comply with court orders. Consider, for example, *United States v. $239,500 in U.S. Currency*, 764 F.2d 771 (11th Cir. 1985), where this Court held that the district court had not abused its discretion by striking the claims of claimants who had failed to comply with a court order requiring their deposition. Much as Judge Scola did regarding Lopez here, the district court in *$239,500 in U.S. Currency* re-set the date for the deposition and added the explicit warning that "if claimants failed to appear" as ordered "the claims will be stricken." *Id.* at 771-72. With full notice of this warning, the claimants simply chose not to show up. *Id.* This Court held:

> The probable merit of the Government's case is irrelevant to the controversy at issue. Discovery orders must be obeyed even by those foreseeing ultimate success in the district court. Sanctions were asked for under Fed. R. Civ. P. 37(b) after claimants twice failed to appear for deposition. Claimants disobeyed the district court's order when they

failed to appear for the second time. While dismissal is a severe sanction, the imposition of sanctions for failure to provide discovery rests within the trial court's discretion and will not be overturned absent abuse of that discretion. *Properties Intern. Ltd. v. Turner*, 706 F.2d 308, 310 (11th Cir.1983). Nothing in the record indicates the district court abused its discretion.

*Id.* at 773. The case at bar mirrors this precedent.

Consider also the principal Eleventh Circuit decision that Judge Scola cited,

*Malautea v. Suzuki Motor Co., Ltd*., 987 F.2d 1563 (11th Cir. 1993), where the Court

held:

In this case, the defendants richly deserved the sanction of a default judgment. . . . [T]he judge's orders undoubtedly compelled the defendants to provide the General Motors information. Nevertheless, both defendants refused to reveal this discoverable information, willfully violating the court's three clear orders. . . . As a result, Judge Edenfield's factual finding that the defendants violated the discovery orders willfully and in bad faith is not clearly erroneous. . . . Having determined that the defendants willfully violated clear discovery orders, we now turn to the question of whether the sanction imposed for this willful violation was "just." We find that it was. The defendants received ample notice of the possibility of a default judgment sanction and liberal opportunity to show why the sanction was not deserved. Similarly, the defendants have failed to show that the harshness of the sanction rendered it unjust. . . . Contrary to the defendants' arguments, a default sanction may be proper even when not preceded by the imposition of lesser sanctions. When lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those ineffective lesser sanctions. Finally, the probable merit of a litigant's case does not preclude the imposition of a default judgment sanction against that litigant. . . . In sum, we affirm the Rule 37(b)(2)(C) sanction of a default judgment against the defendants on the issue of liability. Judge Edenfield's factual findings supporting the sanction are

not clearly erroneous. Nor was the selection of the default judgment sanction.

*Id.* at 1542-44 (footnotes omitted).  Every material aspect of this excerpt from *Malautea* applies with equal force here.  Just as in *Malautea*, here there was a clear violation; the district court found the violation willful; the district court had provided ample warning that a violation would result in default; and any lesser sanction would have been an ineffectual, vain gesture.[6]

### A. Appellants Defied *Repeated* Court Orders, Not Just One

Appellants proceed from a faulty premise when they argue that Judge Scola abused his discretion by entering default judgment "as a sanction for a sole nonappearance at a deposition." Br.51.  It is simply not true that Appellants' offenses were merely "a sole nonappearance."  In reality, as our factual recitation described in detail, Lopez actually blew off *two* of his noticed depositions—first on October 12 and then a second time on October 17—and, all told, he and his companies violated a handful of Judge Scola's orders.  The chart below recounts Appellants' numerous violations:

---

[6] *Accord Thornton v. Hospitality Mgmt. Assocs., Inc.*, 787 F.Appx. 634 (11th Cir. 2019) (unpublished); *In re Steffen*, 660 F. Appx. 843 (11th Cir. 2016); *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538 (11th Cir. 1985); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994); *In re Std. Metals Corp.*, 817 F.2d 625 (10th Cir. 1987); *Church of Scientology of Washington, D.C. v. Webster*, 802 F.2d 1448 (D.C. Cir. 1986); *Gates v. United States*, 752 F.2d 516 (10th Cir. 1985); *United States v. DeFrantz*, 708 F.2d 310 (7th Cir. 1983).

|  | **Date of Violation** | **Violation** | **Source of Law Violated** |
|---|---|---|---|
| *1st Violation* | October 12 | Failure to attend Lopez's in-person deposition | Fed.R.Civ.P 30(a)(1): deposition of party without leave of court |
| *2nd Violation* | October 12 | Filing Daubert motion after October 11 motions deadline | Scheduling Order (R-512) |
| *3rd Violation* | October 14 | Filing "Emergency Motion for Protective Order" after October 11 motions deadline | Scheduling Order (R-512) |
| *4th Violation* | October 17 | Failure to attend Lopez's Zoom deposition | Order Denying 1st Motion for Protective Order (R-523) |
| *5th Violation* | October 17 | Failure to attend Lopez's Zoom deposition | Order Denying 2nd Motion for Protective Order (R-527) |
| *6th Violation* | October 17 | Failure to produce any of the *duces tecum* materials | Order Denying 2nd Motion for Protective Order (R-527) |
| *7th Violation* | November 1 | Failure to respond at all to Requests for Production | Order Denying 2nd Motion for Protective Order (R-527) |

Not surprisingly, given this track record, Judge Scola made clear in his order entering default against Lopez that Lopez had violated more than just one court order. App.121 ("Sanctions for Violation of the Court's Discovery **Orders**) (emphasis supplied); App.122 ("The Court clearly **(and repeatedly)** ordered Mr. Lopez to appear for his deposition.") (emphasis supplied); *id.* ("**In both orders**, the court clearly stated that failure to abide by **those orders** . . . "") (emphasis supplied); *id.* ("Instead of abiding by **the Court's orders** . . . ") (emphasis supplied); *id.* ("The Defendants' **ongoing gamesmanship and disregard of the Court's orders** . . . .") (emphasis supplied); R-547 at 1 ("Mr. Lopez's failure to appear at his deposition in

violation of . . . **this Court's orders** denying the Defendants' motions for protective orders") (emphasis supplied; citations omitted).

Accordingly, Appellants' reliance on *Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172-73 (5th Cir. 1977)—where a *pro se* litigant was defaulted after only "a single, unexcused failure to appear" for deposition, and where the *pro se* litigant "misunderstood the import of Alcoa's efforts to depose him"—is inapposite. Here, there were multiple violations and multiple depositions that Lopez blew off, and his own appellate brief confirms that he knew he was required to attend, but instead he made the conscious choice not to show up. Br.45 ("Lopez appropriately *declined to present himself* for deposition") (emphasis supplied). Lopez was not some confused *pro se* litigant. Please recall also that, contrary to Appellants' claim today that there was no "hint that Lopez would . . . shirk his discovery obligations," Br.51, Lopez's counsel repeatedly wrote to us prior to each scheduled deposition and defiantly stated—both before *and after* motions for protective order had been ruled upon— that Lopez simply "will not attend." R-531-2; R-531-4.[7]

---

[7] Also inapposite is Appellants' citation (Br.52 n.8) to *United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997), where the Court found Rule 37 default unwarranted because—in stark contrast to the case at bar—"no discovery order compelling the claimants to produce the requested discovery had issued[.]" Nor can Appellants gain any refuge from an unpublished decision from the Fifth Circuit, *Heptinstall v. Blount*, 3 F.3d 436 (5th Cir. 1993), where—unlike here—the district court made no specific findings of repeated violations or willfulness. Indeed, the violation of a *single* court order to appear at deposition can warrant default. *S.E.C. v. Ramzilovic*, 738 F.3d 14, 27 (2d Cir. 2013).

**B.** Judge Scola Correctly Found that Appellants' Violations Were Deliberate and Willful, a Finding that Appellants Effectively Admit on Appeal

Appellants are correct when they note that a default cannot be entered without a finding of willful misconduct or bad faith, rather than just "simple negligence, misunderstanding, or inability to comply." Br.50. But they completely fail to address Judge Scola's specific, explicit finding of willfulness, and none of Appellants' deliberate choices can be construed as negligence, a misunderstanding, or an inability to comply. Indeed, Lopez knew exactly when the deposition dates where, and he could have appeared for deposition at any time; recall that his counsel's stated excuse wasn't that Lopez was unavailable on the dates noticed (first October 12, and after Lopez blew off that deposition, then October 17), but rather that *one member of his large legal team* would be traveling on October 17. There was no mistake or inability to comply here—Lopez *chose* not to comply.

Judge Scola recognized this when issuing his default order. He specifically found that, in light of all the circumstances and the full discovery chronology that had transpired to date, Appellants' violations were willful. App.122. Given that Judge Scola had twice before warned Lopez that his failure to appear at his deposition as scheduled **"will"** result in severe sanctions, up to an including entry of default, Appellants cannot seriously contend that their violations were mere inadvertence or anything other than deliberate.

Indeed, they don't even try.[8]  Instead, in their appellate brief, they admit that it was "Lopez's *refusal* to appear at his deposition" (emphasis ours), but they argue his refusal to appear at his (second scheduled) deposition "was excused by his filing of a notice of appeal depriving the court of jurisdiction[.]"  Br.51.  This argument is wrong in every aspect, and Judge Scola correctly called it out in his default order. App.122.

Today Appellants contend that Lopez "did not act in bad faith by refusing to appear" because his "second motion for protective order did not seek to avoid a deposition altogether; rather it only sought to delay the deposition for **two days**." Br.54 (bold in original).  This conveniently ignores several revealing facts.  Please recall Lopez's *first motion* for protective order sought to prevent *all discovery* in the case *forever*.  App. 37.  With that first motion un-ruled upon, Lopez simply blew off his first deposition.  Only when that tactic failed, and a second deposition was noticed pursuant to Judge Scola's order, did Lopez switch over to the tactic of

---

[8] Regarding Lopez's blowing off his first scheduled deposition (on October 12), Appellants try to pin the blame on Judge Scola for "not decid[ing] [Lopez's first motion for a protective order] until after the scheduled date of the deposition." Br.52 n.8.  But Appellants chose to jam Judge Scola by filing that motion (a motion they did not label an "emergency" or "time-sensitive") at 6:45pm on October 10 (the Columbus Day holiday)—the 12th day after we had noticed the October 12 deposition.  R-516.  Judge Scola ruled on the motion within 39 hours.  More to the point, litigants aren't allowed to simply defy a court order based on the mere hope that their pending motion for relief from that order *may in the future* be granted.  *See* App.122.

claiming he needed a delay—even though his own lawyers never denied Lopez was indeed available on the date noticed. Please also recall that the second noticed deposition was set as a remote deposition (by Zoom), so Lopez's suggestion he would need to travel to the U.S. and subject himself to arrest for the deposition to occur is nonsense. All he needed to do was turn on his laptop or smartphone. Even apart from the deposition itself, recall that Appellants never turned over a single document requested, either pursuant to the *duces tecum* or to the Request for Production—nor did they even interpose any objection. R-525-1; R-546.

C. Under the Particular Circumstances of Lopez's Fugitivity, No Sanction Besides Entry of Default Would Have Actually Had the Effect of Penalizing These Appellants

Given Appellants' repeated violations and the willfulness of them, the question then became: what sanction to impose? In his default order, Judge Scola fully acknowledged this Court's cautioning that "the severe sanction of a dismissal or default judgment is appropriate as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." App.120 (quoting *Malautea*, 987 F.2d at 1547).

Judge Scola ultimately found that, based on the particular circumstances presented, no sanction *besides* default would be effective as to Lopez:

> [T]he Court generally lacks an ability to compel Mr. Lopez to obey its orders and require him to participate in discovery based on the Defendants' conduct and Mr. Lopez's fugitive status. (Reply at 1; Lopez De[c]. [a]t 4:7-9.) In light of his conduct to date, the Court finds

that less severe sanctions would not ensure compliance with its orders and "can think of no other sanction that would adequately punish and deter this conduct." *Mishkin*, 2008 WL 708733, at \*6. Therefore the Court **enters default judgment** against Defendant Samark Jose Lopez Bello.

App.122 (bold in original; bracketed material added for clarity).

This finding was eminently reasonable. Lopez had *already* disregarded multiple warnings from Judge Scola—stern, unambiguous warnings—that his failure to comply "**will**" result in sanctions, up to and including default. Issuing another warning would have been pointless and equally ineffectual. Nor was there an available option of imposing a financial penalty because all of Appellants' U.S.-based assets had *already* been blocked by OFAC. And with Lopez safely ensconced as a fugitive in Venezuela, a country that would not extradite him, it would have been a totally empty gesture to hold Lopez in contempt for his violations. The only penalty that would have any *real* effect on Lopez was entry of default.

Under these circumstances, Judge Scola's decision to enter default came nowhere near an abuse of discretion. "The standard of review for a Rule 37(b) dismissal is not whether the reviewing court would, as an original matter, have dismissed the action; it is whether the district court abused its discretion in dismissing the action." *Aztec Steel Co. v. Florida Steel Corp*., 691 F.2d 480, 481 (11th Cir. 1982). "[A] default sanction may be proper even when not preceded by the imposition of lesser sanctions. When lesser sanctions would be ineffective, Rule

37 does not require the vain gesture of first imposing those ineffective lesser sanctions." *Malautea*, 987 F.2d at 1544. "The district court is free to consider the full record in the case in order to select the appropriate sanction." *S. New England Tel. Co. v. Global NAPs, Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (citation omitted).

In an analogous situation, this Court stated in *Adolph Coors Co. v Mvmt. Against Racism & the Klan*, 777 F.2d 1538, 1543 (11th Cir 1985):

> Yet it is evident from the record that no other sanction would have been appropriate. The appellants made clear that under no circumstances would they comply with the discovery order. Thus there were no other means by which the appellees could secure a proper resolution of their claim. Judge Propst resorted to default only after finding that "it would be fruitless to consider other coercive measures" in light of appellants' steadfast assertions. The only effective remedy was the entry of a default judgment and assessment of damages. In the face of such obstreperous behavior we cannot find that the decision of the district court constituted an abuse of discretion.

(citing *Aztec Steel Co.*, 691 F.2d at 481-82) ("In the instant case the court found that Aztec knowingly and willfully failed to comply with court ordered discovery and that sanctions less severe than dismissal would be ineffective. We are unwilling to conclude that the district court abused its discretion."). *See also Razmilovic*, 738 F.3d at 26 ("Although Ramzilovic disobeyed only that single court order, his adamance in the face of the court's warning of possible sanctions that included the extreme sanction of default clearly supported an inference that renewed orders to appear would be unavailing and that no lesser sanction would be effective to induce

Razmilovic to appear in New York for his deposition.").[9]

Just as no abuse of discretion occurred in *Malautea*, *Adolph Coors Co.*, *Aztec Steel*, and *Ramzilovic*, the same is true here. Judge Scola issued all the necessary warnings (indeed, repeatedly); he made all the necessary findings; and he carefully considered the efficacy of less severe alternatives, correctly finding that they would be ineffective under the circumstances.

## II. Appellants' Intentional Misconduct Was Not in Any Way Excused by the Mere Fact That They Had Filed a Notice of Appeal from the District Court's Interlocutory Orders

Appellants try to hide behind their Notice of Appeal. In their view, the moment they filed that Notice of Appeal—on Friday night October 14, with Lopez set to be deposed at 9:00am the following business day, Monday October 17—Judge Scola was divested of jurisdiction, and our discovery requests (and Judge Scola's prior orders thereon) became a nullity, such that Appellants could simply ignore them. That is plainly not the law.

A. Judge Scola's Interlocutory Discovery Orders Were Not Immediately Appealable, and Appellants' Notice of Appeal Was Just a Delay Ploy to Frustrate and Evade the Effect of Judge Scola's Orders

First , the notion that the Appellants' mere filing of a Notice of Appeal—without more—somehow immediately stopped the effect of our deposition notice, and the

---

[9] The appellant in *Ramzilovic* had at least proposed some alternative sanction, albeit one that would've been ineffective. 738 F.2d at 27. Here, Appellants *have never even bothered to propose* any alternative sanction.

effect of Judge Scola's explicit order that Lopez must appear for his deposition at 9:00am October 17, is undermined by the reality that Lopez thought it necessary also to file, on Sunday October 16 with this Court, a "Motion to Stay District Court Proceedings Pending Appeal."  If, as Lopez asserts, Judge Scola had been divested of jurisdiction over the discovery requests, then there was no need for him to seek an appellate stay.

Today, Appellants assert that seeking a stay "from the district court would have been futile" (Br.47), which only serves to underscore that *they knew* a stay of some sort would be necessary; and it also ignores their obvious problem that *they did seek a stay from this Court*, but their request was never ruled upon.  The reality is Appellants needed to comply with Judge Scola's orders and they knew it.

Moreover, the two orders listed in Appellants' Notice of Appeal weren't even immediately appealable.  All those two discovery orders actually did was: (1) order Lopez to sit for a virtual (Zoom) deposition to take place on October 17, rather than on Lopez's preferred date, October 19; and (2) order Lopez to bring to the October 17 deposition, as *duces tecum* materials, certain discovery documents that Appellants were *already obligated* to produce, pursuant to a pending Request for Production.

Appellants' attempt to recast these routine—and non-appealable—discovery orders as something totally different, by seizing upon Judge Scola's language in the

orders, stating that he would not permit Lopez to benefit from his ongoing fugitivity by filing future motions seeking affirmative relief, is unavailing. In the proper context of this litigation, that language was *illusory and functionally irrelevant*. Judge Scola's Scheduling Order, which set the case for a jury trial and established other pre-trial deadlines, had *already* specified that the deadline for any party (including the Plaintiffs/Appellees) to file any pretrial motions was October 11 (R-512 at 1), so by the time Judge Scola included the language about not filing motions "seeking affirmative relief" in his October 12 order, *both sides* were *already* beyond the motions cutoff date. Judge Scola's new language about Lopez's fugitivity actually added *no additional limit* at all.

In practical effect, the two interlocutory orders from Judge Scola were run-of-the-mill discovery orders that were not immediately appealable, so the Notice of Appeal never divested the district court of jurisdiction. *Digital Equip. Corp.,* 511 U.S. at 868; *Mohawk Indus., Inc.*, 558 U.S. at 106; *OFS Fitel, LLC*, 549 F.3d at 1369.

B. Even Assuming, *Arguendo*, That Judge Scola's Orders Were Immediately Appealable, That Still Could Not Justify Appellants' Defiance of Judge Scola's Pending Orders

    1. *A Notice of Appeal is Not Self-Executing, Meaning A Litigant Still Must Comply With a Pending Order Unless and Until that Order is Stayed or Vacated, Neither of Which Happened Here*

Even assuming Appellants' Notice of Appeal was legitimately taken from appealable orders (it was not), that still did not justify Appellants' defiance of Judge Scola's orders.

In *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201-2 (11th Cir. 2016), this Court considered a similar argument from an appellant—i.e, "that the Contempt Order is unlawful because the First Appeal divested the District Court of jurisdiction to consider the Sanctions Motion." The Court easily disposed of that argument, labelling it a "frivolous jurisdictional argument." *Id.* As the Court explained, "Absent entry of a stay on appeal—which Trident Atlanta failed to obtain here—the District Court retained jurisdiction to enforce its orders." *Id.*[10]

This Court has relied on *Sergeeva* repeatedly to quicky dispose of the argument that a district court cannot enforce its orders merely because a notice of appeal had been filed challenging the correctness of that order. *JYSK Bed'n Linen v. Dutta-Roy*, No. 15-14859, at 2-3 (11th Cir. Oct. 20, 2017); *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1251 (11th Cir. 2020).

Appellants effort to distinguish *Sergeeva* is unavailing. They say a distinguishing factor is that the Supreme Court has held "an exception would lie

---

[10]Accord *United States v. Hitchmon*, 602 F.2d 689, 691 (5th Cir. 1979) (*en banc*) ("the notice of appeal from a nonappealable order does not render void for lack of jurisdiction acts of the trial court taken in the interval between the filing of the notice and the dismissal of the appeal by either the district court or the appellate court.").

where the court order forced a party to surrender a constitutional right where 'compliance could cause irreparable injury because appellate courts cannot always unring the bell.'"  Br.47-48 (quoting *Maness v. Meyers* , 419 U.S. 449, 460 (1975)). This argument fails for many reasons.

First, this same argument could have been made in any of the cases we just cited—*Sergeeva*, *JYSK Bed'n Linen*, *Escobio*—because if a district court's existing order must be complied with, that naturally limits the permissible range of what any disappointed litigant/would-be appellant can or cannot do.  Litigants are not simply "free" to flout court orders.  Second, there was no right of these Appellants implicated—and certainly none of constitutional magnitude—by Judge Scola's order directing Lopez to appear for his deposition on October 17, as opposed to his preferred date of October 19.  Third, nor would there have been any sort of irreparable "ringing of the bell" situation by his deposition occurring a mere 48 hours before Lopez wished.[11]  Fourth, there is no merit to Lopez's contention that "[a]ppearance at his deposition as ordered [on Monday October 17] would cause irreparable injury to [his] constitutional rights . . . [because] compliance . . . would have mooted this Court's jurisdiction to hear his appeal of the orders on the merits."

---

[11] Notably—and unlike the situation in *In re Grand Jury Proceedings*, 601 F.2d 162, 169 (5th Cir. 1979)—Lopez has never asserted that any of the information sought by Appellees in discovery involved any sort of "privileged" information, or anything else whose disclosure might present a "cat out of the bag" problem.

Br.48.  It simply does not follow that Lopez being deposed would have rendered moot the other aspects of Judge Scola's order—especially not the "prohibition" on Lopez filing future motions, which was the real crux of Lopez's interlocutory appeal.[12]  Fifth and finally, a court order precluding a litigant from filing future motions is surely not a "constitutional violation" of his Due Process rights or his First Amendment right of access to the courts, when a motions deadline from the same court's Scheduling Order is *already in effect as to all parties*.[13]

### 2. *Lopez's Post-Hoc "Justifications" for Defying Judge Scola's Orders are Baseless*

In their appellate brief—but never presented to the district court—Appellants

_____

[12] *RES-GA Cobblestone, LLC v. Blake Constr. & Develop't, LLC*, 718 F.3d 1308 (11th Cir. 2013), is not to the contrary.  Unlike the hypothetical situation that Lopez now posits, the appellant in *RES-GA Cobblestone* fully complied with *all aspects* of the order he had appealed from, leaving no aspect of the order left for appellate adjudication.  *Id.* at 1314  *Cf. In re Grand Jury Subpoena Duces Tecum* , 955 F.2d 670, 672 (11th Cir. 1992) (holding appeal moot because contemnor had "*completely* purged his contempt") (emphasis added).

[13] In our Statement Regarding Jurisdiction, *supra*, we debunked Appellants myth (Br.40) that that Judge Scola's discovery orders denying their two motions for protective order "served as an injunction."  Without repeating those points here, it bears adding that even assuming, *arguendo*, those orders could somehow be considered "an injunction," that would merely gut Appellants' argument that their filing of a Notice of Appeal from those orders somehow protected them from having to comply with the "injunction" while appellate review of it was ongoing.  *See Howat v. Kansas*, 258 U.S. 181, 189-90 (1922) ("An injunction duly issuing out of a court of general jurisdiction with equity powers . . . must be obeyed by them, however erroneous the action of the court may be.");  *Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir. 1979).

have constructed two post-hoc "justifications" for defying Judge Scola's orders after they filed their Notice of Appeal.  Both are meritless.

First, they argue, if they had complied with Judge Scola's order directing Lopez to attend the October 17 deposition, that "would have mooted this Court's jurisdiction to hear his appeal of the orders on the merits."  Br.48 & 54.  That does not hold water for two reasons.  Judge Scola's orders were not confined just to Lopez's appearance at his deposition; they also directed Appellants to respond to our written requests for discovery, so if Lopez had appeared for his deposition as ordered on October 17 but not produced any written discovery, theoretically his appeal would not have been rendered completely moot.  Moreover, Appellants admit that Lopez was perfectly willing (or so he now claims) to be deposed on his preferred date, October 19—just 48 hours after the ordered October 17 date.  It makes no sense that Lopez was perfectly willing to have his appeal rendered moot on Wednesday October 19, but not two days earlier, on Monday October 17.  The reality is: Appellants weren't worried about rendering their appeal moot; what they were worried about was *having to subject themselves to discovery*.

Second, Appellants construct the post-hoc justification that Lopez was entitled to defy Judge Scola's orders; risk being held in contempt; and then challenge the validity of the contempt citation afterwards.  Br.47-48 (citing *Maness*).  But this rings hollow because Lopez knows that his ongoing fugitive status in his safe-haven

of Venezuela renders him effectively impervious to any contempt citation.  App.22 ("[T]he Court generally lacks an ability to compel Mr. Lopez to obey its orders . . . based on . . . Mr. Lopez's fugitive status.").  Moreover, as even Appellants concede (Br.47), the *Maness* exception can apply only where a party has been forced "to surrender a constitutional right."  As previously noted, Appellants were not denied *anything at all* (much less a constitutional right) by Judge Scola's illusory "limitation" on Appellants' ability to file future motions seeking affirmative relief.[14]

In short, Appellants had no legitimate justification to defy Judge Scola's orders.  Their violations were brazen, repeated, willful, and inexcusable—and as a practical matter, Appellants were punishable only by the entry of default.

This Court need go no further to affirm.

### III.    Appellants' Protracted Discussion of the Fugitive Disentitlement Doctrine ("FDD") is an Irrelevant Sideshow, Designed to Distract from Appellants' Willful, Repeated Violations of Court Orders

As we alluded to in our Introduction, the entire FDD topic—which occupies nearly 46 pages of Appellants' 56-page brief—is a mere distraction.  In order to affirm, this Court need not reach the question of whether the FDD applies to Appellants, and if so, what remedy under the FDD was appropriate here.  Make no mistake: we maintain that Judge Scola was quite correct in his determination that the

---

[14] Nothing in the discovery orders prevented Appellants from proceeding to trial and defending themselves on the "agency or instrumentality" issue.

FDD should indeed apply here, but that FDD ruling had no effect whatsoever on Judge Scola's ultimate entry of default judgment.  App.118.

A. <u>Whether or Not the District Court Properly Applied the FDD,<br>
Those Rulings Had No Effect on Appellants or on Their Obligation<br>
to Comply With the District Court's Orders</u>

The fact that Lopez is a fugitive had no bearing on whether he was required to submit himself to written discovery and deposition—he was, just like any other non-fugitive party in any other case would've been.  *See* Fed. R. Civ. P. 30(a)(1).  And as for Judge Scola's stated "limitation" on Appellants' future filing of motions, based on Lopez's fugitivity, that limitation was illusory anyhow.  The October 11 deadline for filing motions by any party had *already* elapsed pursuant to the Scheduling Order.

Moreover, as Judge Scola's Orders specifically stated, his FDD determination was merely *one of two alternative, independent bases* for his denials of Appellants' two motions for protective order—the other basis being that Appellants' stated objections to our discovery requests were substantively baseless on the merits.  App. 88-89, 93, 118.

Appellants have not even bothered to seriously challenge the substantive legitimacy of Judge Scola's discovery rulings.  Indeed, all they utter are unsupported buzzwords, calling our requested discovery "oppressive, unduly burdensome, and irrelevant" (Br.6), but as Judge Scola noted in his orders, they never actually

43

presented to him with any argument to this effect, much less supported it.  App.89 n.1, 93.[15]

In other words, Judge Scola's FDD determination was entirely irrelevant to his discovery rulings.  Accordingly, there being two independent bases for Judge Scola's discovery rulings, the correctness of that FDD determination has no bearing on whether Appellants were appropriately defaulted.

### B. The District Court's Treatment of the FDD Question Was Entirely Reasonable and Nowhere Near Reversible Error

If this Court decides to reach the FDD question, Judge Scola's treatment of it came nowhere near the applicable standard for reversible error, which is abuse of discretion.  *Stansell 2022*, 14 F.4th at 1348.

---

[15] Appellants also make the bizarre argument (Br.35-36) that they know better than Judge Scola what he intended when he wrote his own Scheduling Order.  According to Appellants, the Scheduling Order never intended for there to be *any discovery* in the case, notwithstanding its inclusion of a deadline for deposition page/line designations.  App. 8.  Judge Scola squarely addressed this argument and held otherwise in his order denying Appellants' first motion for protective order.  App.89.  In that same order, Judge Scola also cogently explained why the ordinary limitations of Rule 26(f) did not apply to this fast-tracked "proceedings supplementary" matter.  *Id.*  Appellants have no answer for this but to simply reference the general applicability of Rule 26(f) *to mine-run cases*.  Appellants also argue (Br.38) that "no discovery of assets was necessary" because all of Lopez's U.S.-based assets had already been blocked by OFAC, but this misses the point.  We were entitled to receive paper discovery about all of the "El-Aissami & Lopez Bello Network" (R-116-1) entities because that bore on the central question for trial:  How did Lopez actually acquire his billions—was it by being a "legitimate businessman in Venezuela" (as Lopez contended) or was it by acting as the front-man money launderer for the narcotics Kingpin El-Aissami?  Notably, this Court specifically referenced "reciprocal discovery" in its *Stansell 2022* opinion.  14 F.4th at 1359 n.8.

### 1. Judge Scola's Measured, Middle-Ground Treatment of the FDD Issue was Entirely Reasonable

As this Court has explained, a court may apply the FDD to dismiss a lawsuit or appeal if three elements are met: (1) the party against whom it is invoked is a fugitive; (2) his or her fugitive status has a sufficient connection to the present action; and (3) dismissal is necessary to effectuate the concerns underlying the doctrine. *Ener v. Martin*, 987 F.3d 1328, 1331 (11th Cir. 2021). The doctrine applies in both civil and criminal proceedings, and in district courts as well as on appeal. *Id.*[16]

As Judge Scola correctly determined, each of the three elements of the FDD are applicable to Lopez:

As to the first element: Lopez is unquestionably a fugitive, and this Court has already so found. *Stansell 2022*, 14 F.4th at 1348.

As to the second element: Lopez's fugitive status has a sufficient connection to the present action. The very reason that OFAC sanctioned Lopez as a Kingpin is that Lopez Bello was helping Tareck El Aissami, by acting as El Aissami's front-man and laundering his drug proceeds. *See, e.g.*, R-513 at 11 (summarizing OFAC's unclassified fact-findings as filed in *Lopez v. Bradley Smith, Acting Director of*

---

[16] Appellants contend that under *Pharaon*, it is not even proper for the Court to utilize this 3-factor FDD test to them (Br.21 n.4, 29-30), but this Court applied this same basic analytical framework in *Pesin*—a post-*Pharaon* case involving a civil defendant—and it is exactly the same three-part test this Court told us to utilize last year in *Stansell 2022*, when it posed the FDD question to counsel. R-513-3.

*OFAC*, D.D.C. Case No. 1:21-cv-01727-RBW). That is why OFAC blocked these assets in the first place, and the reason Plaintiffs' execution efforts against the assets exists. And Lopez is a fugitive from the criminal indictment in the S.D.N.Y., which charges him for continuing to aid and assist El Aissami, even after Lopez was designated by OFAC, this time by using prohibited cash to evade the OFAC sanctions and fly both men out of Venezuela to various places like Russia and Turkey. Thus, as Judge Scola correctly determined, there is a close connection. App.91.[17]

As to the third element: imposing some sort of penalty was necessary under the circumstances to effectuate the concerns underlying the doctrine. Indeed, it would have been inequitable to allow Lopez to continue to game the American justice system. His flight from American justice in his criminal case had turned the civil litigation into a "one-way street" in which Lopez is essentially saying "heads I win, tails you'll never find me." *Ener*, 987 F.3d at 1332. In a real sense, Lopez's fugitivity caused us prejudice. We could not depose Lopez in-person; we could not secure his testimony under oath *when that oath had the teeth of actual contempt behind it* (because a contempt finding to Lopez while he was in his safe haven of Venezuela meant nothing); and we could not get any paper discovery from him. All

---

[17] Appellants attempt to resurrect a "temporal limitation" argument (Br. 33 n.6) that was already rejected by this Court. *Stansell 2022*, 45 F.4th at 1350.

of this was crucial because it was relevant to the "agency or instrumentality" issue at trial.

On that central question, we (the Plaintiffs/Appellees) had to put forward *our evidence* under oath, subject it to cross-examination, and the like. But hiding out from American justice in Venezuela, Lopez avoided this. His fugitivity had created a one-way street, and it only promised to get more prejudicial to us if the jury trial commenced.[18] "Disallowing that gamesmanship avoids prejudice to the nonfugitive party" and "promotes the efficient, dignified operation of the courts[.]" *Ener*, 987 F.3d at 1322 (citations omitted).

Facing the reality that all three elements of FDD are met here, Appellants incorrectly argue (Br.19) that the prevailing precedents impose a categorical ban on applying the FDD "against a fugitive in a criminal case from defending his property rights in a civil proceeding." Not true. Contrary to Appellants' contention, the operative precedent for these circumstances is not *Degen* or *Pharaon*. Rather the

---

[18] Yet another way Lopez's fugitivity gamed the system and thereby prejudiced us is that his fugitivity has delayed his criminal trial for over three years, and his conviction there—his co-conspirator in the assets-evasion scheme, Victor Mones Coro, has already pled guilty, S.D.N.Y. No. 19-cr-144 at DE 195, 265—would have provided us the ability to collaterally estop Lopez from denying certain facts (i.e. the nature of his relationship to El-Aissami) in this case, as well as in our other TRIA execution cases against his OFAC-blocked assets pending in other courts. *See United States v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005) (federal criminal conviction is entitled to issue preclusive effect).

operative precedent is *Pesin v. Rodriguez*, 244 F.3d 1250 (11th Cir. 2001). *Pesin*, which post-dates both *Degen* and *Pharaon* by several years, held that the FDD can indeed be applied to a civil defendant who was "defending" her property or other interests (there, a mother's asserted custodial rights to her minor child). *Id.* at 1253. The defendant/fugitive in *Pesin* had not taken any "affirmative" action like filing a lawsuit, an administrative petition, or the like. She simply defended against her husband's lawsuit, lost in the district court, and then appealed—yet this Court found FDD dismissal to be appropriate. *Id.* at 1251-53.

In *Stansell 2022*, this Court stated: "we have cases going both ways as to whether the doctrine can and should apply to litigants who are defending civil lawsuits." *Stansell 2022*, 45 F.4th at 1348. The Court specifically referred to both *Pharaon* and *Pesin*. As set forth *supra*, we respectfully submit that the case at bar falls more on the *Pesin* side of the line, in that Lopez's fugitivity is closely related to the crucial facts of this TRIA execution, and his fugitivity was prejudicing and frustrating our asset-collection efforts. Moreover, *Pesin* emphasized that prejudicial effects upon the nonfugitive party, and whether the fugitive has been ignoring court orders, are both highly relevant considerations. *Pesin*, 244 F.3d at 1253.

> ### 2. Affirming Judge Scola's FDD Ruling Would Not Create a Circuit Split

Appellants' imagined "Circuit-split" is entirely contrived. It begins from the faulty premise that Judge Scola "relied on" *United States v. Shalhoub*, 885 F.3d 1255

(11th Cir. 2017), when in reality Judge Scola only made a stray reference to *Shalhoub*, citing it for the unremarkable proposition that the FDD allows a district court to impose various sanctions against a fugitive.  App.90.  Numerous cases say the same thing.

In any event, the case at bar differs significantly from the assertedly-"conflicting" decision, *United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021).  In *Bescond*, the Second Circuit held that the criminal defendant was *not even a fugitive*; her "presence abroad is unrelated to the American prosecution. She is a French citizen, living in France, where she supports a family, and is employed in a legitimate line of work. A different result may obtain if a person's presence abroad is in any part covert or suspect: a hideout, sanctuary, or escape from the reach of law." *Id.* at 773.  In contrast, Lopez is indeed a fugitive—he admitted as much to this Court in *Stansell 2022*, and the Court so found, 14 F.4th at 1348—and his current presence in Venezuela (a country that will not extradite him) is highly suspicious.  Prior to being designated as a Kingpin by OFAC (and prior to his criminal indictment), Lopez admitted he "maintained a substantial presence in the United States, having made the United States his intended home" and that he was "physically present in the United States . . . approximately a week before his designation." R-513 at 9 n.8 (citing Lopez's own affidavit).

As an alternative basis for its ruling, the Second Circuit in *Bescond* also held

that the trial court abused its discretion by applying the FDD to deny Bescond's *motion to dismiss her criminal indictment*. 24 F.4th at 771. We emphasize "motion to dismiss his criminal indictment" because that is worlds apart from employing the FDD to deny Lopez's *ability to file motions seeking affirmative relief in this civil, terrorism victims' judgment execution under TRIA*. The district court ruling in *Bescond* directly implicated the fugitive's criminal liability—her freedom—but Judge Scola's ruling here had no implications for Lopez at all. He was already past the motion deadline. The FDD ruling was stated as an expressly independent, alternative basis for denial of Lopez's motions for protective order.[19] And, in the final analysis, the upshot for Lopez, at most, was that he merely had to participate in exactly what he had demanded this Court grant him: a civil jury trial.

None of this is even remotely like *Bescond*.

### 3. None of Appellants' Constitutional Rights Were Violated by the District Court's Interlocutory Orders

As a last-gasp, Lopez argues that Judge Scola's interlocutory discovery

---

[19] This Court need not wade into the esoteric distinction that Lopez discusses between "affirmative relief" and "defending civil claims brought against him." Br.23-24. But, to get technical, Lopez was engaged in "affirmative" rather than "defensive" measures here: under Florida's garnishment statute (which applied here pursuant to Rule 69(a)(1)), Lopez was the movant regarding the garnishment, not us. Fla. Stat. §77.07(2). Moreover, Lopez affirmatively attacked our judgment by way of his Rule 60(a) motion, *see Stansell 2022*, 40 F.4th at 1311; he filed scores of other motions; and he filed at least nine appeals in this Court. Those are hardly "defensive" tactics.

rulings violated his Constitutional rights, specifically, his right to Due Process and his First Amendment right of access to the courts.  Br.40-45.  This argument is not serious.  First, a court order that precludes a litigant from filing future motions is surely not a "constitutional violation" when a motions deadline from the same court's Scheduling Order is *already in effect as to all parties and has lapsed*.  Every case has a motions deadline, and such a deadline is not an *unconstitutional limitation* on litigants' freedom.  Second, Lopez was not "denied the ability to defend himself" or "the opportunity to be heard."  Br.40-41.  He could have complied with Judge Scola's orders, submitted himself to discovery, and then fully defended himself at the jury trial he demanded.  Nor was he prevented from seeking a stay of Judge Scola's interlocutory rulings; indeed, he sought just such a stay from this Court.  But when Lopez didn't receive a stay, he simply chose to defy Judge Scola's orders.  That's not a denial of Due Process or the First Amendment.

#### 4.  *Judge Scola's FDD Ruling, at Worst, was Harmless Error*

Because Judge Scola's FDD ruling was merely an alternate basis for his discovery rulings, and because the "limitation" he placed on Appellants' motion-filing was actually illusory, Appellants were not prejudiced in any way by the FDD ruling.  Accordingly, any possible error was harmless, and not a basis for reversal.  28 U.S.C. §2111; Fed. R. Civ. P. 61.

### IV.    If This Court Wishes to Reach Out to Decide the FDD Issue— Which It Need Not Do to Affirm in this Appeal—the FDD Issue Provides an Independent, Alternative Basis for Affirmance

As noted *supra*, Judge Scola did not abuse his discretion by determining that the FDD applied to Appellants.[20]  We respectfully submit the remedy that would have best effectuated the concerns underlying the FDD would have been *to default Appellants entirely*—not just state an (illusory) limitation on his motion-filing ability.  Prevailing Circuit precedent allows entry of default pursuant to the FDD under these circumstances.  *See Pesin*, 244 F.3d at 1253 (dismissing appeal of fugitive defending her parental custodial rights).  Thus, if this Court wishes to reach out to decide the FDD issue—which it need not do—the FDD provides an independent, adequate basis to affirm the judgment.

### CONCLUSION

The Court should affirm.

Respectfully submitted,

s/ *Richard B. Rosenthal*
Richard B. Rosenthal
Florida Bar No. 0184853
THE LAW OFFICES
 OF RICHARD B. ROSENTHAL, P.A.
1581 Brickell Avenue

---

[20] Nowhere in Appellants' Brief do they contest Judge Scola's finding that the Corporate Appellants were essentially just the alter ego of Lopez himself, and thus they should suffer the same fate as Lopez. *Stansell 2022*, 14 F.4th at 1340; R-547. They all conceded this point below and have done so again here.

Suite 1408
Miami, Florida 33129
Tel: (305) 992-6089

-and-

Newton P. Porter
Tony Korvick
PORTER & KORVICK, P.A.
9655 South Dixie Highway
Suite 208
Miami, Florida 33156

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Response complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i).  The Response contains 12,984 words.

s/ *Richard B. Rosenthal*
Richard B. Rosenthal

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed with the Court via its CM/ECF system this 1st day of February 2023.  I further certify that a true and correct courtesy copy was served upon Counsel the same day by the CM/ECF system.

s/ *Richard B. Rosenthal*
Richard B. Rosenthal